*In re* DUBOIS' ESTATE.

ROHRIG'S APPEAL.

1. TRUSTS—ASSIGNMENTS FOR BENEFIT OF CREDITORS—EVIDENCE.
   Where claimant held a note, given to pay indebtedness that had in part accrued before his debtor executed a deed of trust, and where claimant could not testify what part so accrued or what part of the note represented subsequent indebtedness, the court did not err in directing a verdict in favor of the trustee's estate.

2. CONTRACTS — NOVATION — CONSIDERATION — ASSUMING INDEBTEDNESS. .
   In a proceeding to enforce a claim against the estate of a decedent, who had received property from his father subject to the debts of the latter, a letter written by the son promising to pay debts created after the execution of the trust deed was improperly received in evidence, in the absence of testimony that claimant promised to forbear collecting his claim against the father, or granted any extension or favor in consideration of decedent's assuming the debt.

3. ESTATES OF DECEDENTS—APPEAL FROM FINDING OF COMMISSIONERS ON CLAIMS—EXECUTORS AND ADMINISTRATORS.
   On appeal from the commissioners on claims in an estate, the cause is heard *de novo*, and the executrix who did not appeal may review the judgment of the circuit court on error.

4. EVIDENCE—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
   Testimony of a claimant as to the contents of a letter sent by him to decedent, and referred to in a reply that decedent sent to claimant, was properly excluded as equally within the knowledge of decedent. Act No. 30, Pub. Acts 1903 (5 How. Stat. [2d Ed.] § 12856).

Error to Monroe; Golden, J.   Submitted June 20, 1913.   (Docket No. 51.)   Decided July 9, 1913.

Claim by Frank J. Rohrig  against  the estate of

Louis J. Dubois. The commissioners on claims disallowed a part of the claim. Claimant appealed to the circuit court. From a judgment for claimant for part of amount claimed, both parties bring error. Reversed; new trial denied.

*Anderson, Rackham & Wilcox,* for appellant.

*E. R. Gilday* and *Willis Baldwin,* for appellee.

KUHN, J. This appeal is to review a judgment directed by the circuit court for the county of Monroe, allowing a portion of plaintiff's claim against the estate of Louis J. Dubois, deceased. In the year 1896, Louis Dubois, the father of the deceased, became involved financially, and on August 17th of that year, in order to provide for the payment of his debts, he conveyed all his real estate to his two sons, Louis J. Dubois, now deceased, and Edmund T. Dubois, charged with the payment of all debts he was owing at the time the trust deed was executed. Some time afterwards Edmund T. Dubois relinquished his interest in the trust deed, and the trust was thereafter administered by Louis J. Dubois up to the time of his death. The terms of the trust deed are broad enough to include any debts Louis Dubois might have been liable for or owed on the date of the deed, even though the amounts had not be disclosed to his sons. It appears that the claimant, for 10 or 12 years prior to April, 1912, had had business dealings with Louis Dubois, Sr., lending him money and signing his notes. The items making up this claim are: June 20, 1904, $120 cash advanced; May 31, 1905, cash $16.50; May 31, 1905, a note given for $250 by F. J. Rohrig to Louis Dubois as an accommodation paper and subsequently paid by Rohrig; and a note dated May 23, 1906, for $500.

It is claimed that this $500 note was given in pay-

ment, at least in part, of moneys borrowed 10 years earlier. No claim is made that any of the other transactions antedate the trust deed, and the testimony of the claimant with reference to the $500 note is very indefinite and uncertain. He testified as follows:

"*Q.* Mr. Rohrig, you say part of this $500 note was borrowed back 10 years earlier, and you said you couldn't say how much, didn't you?

"*A.* Yes.

"*Q.* And when he made the first loan, you made the first loan to Mr. Dubois; after that he made payments, didn't he?

"*A.* Yes.

"*Q.* And then again he borrowed some more money?

"*A.* Yes.

"*Q.* And you had a sort of running account with him down to the time this $500 note was given?

"*A.* Yes.

"*Q.* And you can't state anything about what the original loan was?

"*A.* No; because they were in the shape of notes that were destroyed.

"*Q.* How large payments did he make after this first loan?

"*A.* I can't tell you that.

"*Q.* Haven't you any idea?

"*A.* No, sir.

"*Q.* He reduced his debt sometimes quite a bit, didn't he?

"*A.* Yes. And sometimes he increased it.

"*Q.* And how frequently would he do that?

"*A.* That would depend on the time; the notes were made for sometimes 90 days, sometimes 60 days, and sometimes 30 days.

"*Q.* And sometimes they were paid when due, and sometimes he wouldn't?

"*A.* Yes.

"*Q.* And sometimes he borrowed more money?

"*A.* Yes.

"*Q.* And he would give you another note for that?

"*A.* Yes.

"*Q.* And then you bunched them up in this $500 note finally; is that right?

"*A.* Yes.

"*Q.* And you can't now make any estimate of what the original loan started at, and how much it was reduced?

"*A.* This is the fourth time I have answered you that question; no.

"*Q.* Do you know whether any part of that $500 note was for money advanced previous to August 17, 1896?

"*A.* I can't say definitely because I haven't any of the papers to go by; only from memory."

It is very evident from this that it would be impossible for a court or jury to determine how much of the money represented by the $500 note was advanced before the trust agreement was given, and the trial judge properly charged the jury with reference thereto, as follows:

"It appears from the bill itself that much of the present claim arose subsequent to the execution of the trust deed. To attempt to arrive at any sum as being due or owing when the trust deed was executed would be guesswork and speculation, and under the evidence in this case I charge you that the appellant has not shown that his claim, or any portion thereof, is covered or secured by the trust deed referred to, and the appellant cannot recover in this case under or by virtue of said trust deed."

On the trial of the cause, in order to substantiate the claim, a letter was received in evidence written by Louis J. Dubois, deceased, to the claimant, under date of October 25, 1905, the material portions of which being as follows:

"FRIEND FRANK:

"Your letter of the 22d was pretty near like the last straw on a camel's back. If I had known that my father owed you such a large amount at the time that I agreed to take the farm and pay his debts, I never would have done so, as I was already taking up about

$30,000 worth of debt, which I have long since realized is more than my resources will permit. Up till this last spring I did not know of this indebtedness beyond the fact that he called on me for money from time to time to take care of a certain $220.00 note which I believe you endorsed and finally paid. What he did with all that money is more than I can tell. He surely did not help me with it, and in a measure I do not feel responsible; however, you have been such a good friend that I cannot see you lose it either, but I am in no position at present to pay anything. * * * This last affair has made me decide to sell the place and everything with it and pay up all of his indebtedness and dig out of Monroe to begin life over."

It is claimed that this letter is an independent promise to pay any debt of the father to Rohrig, whether created prior or subsequent to the trust deed, and is based upon a sufficient consideration. The consideration relied upon is a claimed forbearance on the part of Rohrig in not pressing his claim to judgment and making a levy on the reversionary interest of the father in the property covered by the trust deed. The infirmity in this position arises from the fact that the record does not disclose that plaintiff promised to forbear collection, extend time of payment, or grant any favor to any person in consideration of the deceased assuming any new debt. He does say he took no steps towards forcing the collection of the account after receiving the letter, but does not say that receiving the letter was the reason for his not doing so. No consideration having been shown for this promise made in the letter, it was improperly admitted in evidence. The court directed a verdict for the $220 note mentioned in the letter, less a payment claimed to have been made by some straw which Dubois had shipped Rohrig, amounting to $97.53. Without the letter, there was nothing left to support the claim, and a verdict should have been directed for the defendant.

It is urged that, as the defendant did not appeal from the order of the probate court, she is not aggrieved by the action of the circuit court, and the appeal to this court should for that reason be dismissed. An appeal having been taken from the determination of the commissioners on claims, the matters in controversy were heard *de novo* in the circuit court, and either party had a right to appeal from the judgment of that court.

The executrix was served with notice to produce a letter claimed to have been written by claimant to the deceased, and referred to in the letter of October 25th. She testified that she was unable to find such a letter, and while claimant was on the witness stand he was asked to state the contents of the letter. It was objected to as stating matters equally within the knowledge of the deceased, and, upon the objection being sustained, an exception was taken, and error is assigned upon this ruling of the court. This ruling was correct, as clearly, this would come within the terms of Act No. 30 of the Public Acts of 1903 (5 How. Stat. [2d Ed.] § 12856). The claimant is testifying in support of his claim, and the cause is being defended by the personal representative of the deceased. The matter, if true, must have been equally within the knowledge of the deceased person.

Judgment is reversed, and no new trial granted.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.