## In re TRANS–LUX MOVIES CORPORATION et al.

## KNECHTEL v. H. KELLY & CO.

### Nos. 7096, 7097.

Circuit Court of Appeals, Sixth Circuit.

Nov. 11, 1935.

W. W. Brashear, of Detroit, Mich. (Frederick B. Darden, of Detroit, Mich., on the brief), for Knechtel, Trustee.

M. Hubert O'Brien, of Detroit, Mich., for H. Kelly & Co.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

The appellee installed air-conditioning equipment in a building belonging to the Daylight Theaters Company. The installation was made under a written contract which provided that the appellee would furnish and install the equipment for $6,750, $4,500 of which was to be paid upon the completion of the installation, and the balance in six monthly installments commencing sixty days thereafter. Fifteen hundred dollars of the $4,500 was paid after the equipment was installed, and upon the later adjudication of the theaters company as a bankrupt the appellee filed a petition to reclaim the equipment, alleging that it was the owner and entitled to possession of it. After hearing proofs, the referee dismissed the petition. Upon review on a certificate of the evidence, the trial court found that the written contract had been modified by a parol agreement for the retention of title to the equipment in the seller, and entered an order granting the reclamation.

The written contract was executed for the appellee by Byrnes, its Detroit manager, and for the theaters company by Joyce, its president. Both testified at the hearing before the referee. Neither claimed that anything was incorporated into or left out of the contract by fraud or mistake. Byrnes testified that he objected to signing it because it contained no title-retaining clause, but when assured that "there was $4,500 in the bank waiting for us" when the installation was substantially completed, "I figured that I could take a gamble on the balance, which was something like $2,250, or whatever it was," and did not insist upon inserting the clause into the contract. He was corroborated as to his objection to signing the contract and the promise of a prompt payment of the $4,500 by Tolton, another employee of the appellee.

The finding of the court was based on the testimony of Byrnes and Tolton to the effect that after the theaters company had failed to pay the $4,500 upon the completion of the installation, they called upon Joyce and inquired what protection the appellee had in case the theaters company failed, to which Joyce replied: "You have got the same protection as though you had a title-retaining contract." Byrnes said that Joyce assured them twice during the conversation that the equipment "belonged to us and would continue to belong to us * * * just the same as if * * * the title-retaining clause was included in our contract." Joyce denied making these statements. We assume for the purpose of decision that he made them, but we are nevertheless of opinion that there was no modification of the original contract of sale. At that time the title to the equipment was in the theaters company, and it cannot be held that statements such as it is said Joyce made had the effect of transferring it back to the appellee. There was no ambiguity in the contract. Its language was clear. Nothing was done or said to indicate a purpose to abrogate it or to amend it by making it a title-retaining contract; certainly nothing was done to pass the title back to the vendor. The statement of Joyce was at most merely a statement of his view of the legal effect of the written contract about which the appellee's representatives knew as much as he. Mutual Life Insurance Co. v. Phinney, 178 U. S. 327, 342, 20 S. Ct. 906, 44 L. Ed. 1088. Moreover, there was no evidence to show that the appellee acted on the statement or assented to it. It was not a promise, but if it be assumed that it was, there is nothing in the record to show that it was accepted or that there was a consideration for it. It is true, of course, that at the time a substantial part of the promised initial payment was overdue, and also that forbearance to sue on an overdue indebtedness may constitute a consideration for a new promise or for an additional obligation. There is nothing in the record, though, to show that there was either an express or an implied agreement to refrain from bringing suit on the indebtedness. The consideration for the installation was a promise on the part of the theaters company to pay a stipulated sum. When the appellee performed its part of the contract, the obligation of the theaters company to pay this sum matured. This obligation the appellee had the right to enforce according to its terms, but it could not create a new obligation or acquire new rights under the contract without a supporting consideration (sections 2461, 2464, Page on Contracts), and even if Joyce's statement may be regarded as a promise to retransfer title to the appellee, it is unenforceable because not supported by a consideration. In re Dubois' Estate, 176 Mich. 407, 411, 142 N. W. 561. See, also, Empire State Surety Co. v. Hanson (C. C. A.) 184 F. 58; Brunswig Grain Co. v. Anchor Grain Co. (C. C. A.)

694

10 F.(2d) 304, 306; Moss v. Aetna Life Ins. Co. (C. C. A. 6) 73 F.(2d) 339.

The order of the court granting the reclamation is reversed, and the petition dismissed.