HARRISON NATIONAL BANK OF CADIZ, OHIO, APPELLANT, V. CYRUS O. AUSTIN ET AL., APPELLEES.

FILED JULY 22, 1902. No. 10,773.

Commissioner's opinion, Department No. 1.

1. **Agency:** INVESTMENTS: NOTES AND MORTGAGES: BUSINESS USAGE: COLLECTION: FULL AUTHORITY: PAYMENT. Where one has placed his agent for the investment of money in notes and mortgages in such a situation that persons of ordinary prudence, acquainted with business usages, would be justified in regarding such agent as having full authority with reference to the ex-

tension, collection, etc., of such notes and mortgages, payment to such agent will be deemed payment to the principal.

2. **Possession of Note by Collector:** INFERENCE. That a party to whom money due another is paid is not in possession of the evidences of the indebtedness is not conclusive of the question of authority or lack of it to make the collection. Such authority may be inferred from the fact that similar acts, through a series of transactions relating to a like business, have been uniformly ratified by the creditor.

3. **Evidence.** Evidence examined, and found to sustain the findings and judgment of the trial court.

APPEAL from the district court for Chase county. Heard below before NORRIS, J. *Affirmed.*

*Abbott, Selleck & Lane* and *John S. Bishop,* for appellant.

*Charles G. Ryan, Charles W. Meeker* and *William O'Connor, contra.*

KIRKPATRICK, C.

This is a suit brought in the district court for Chase county by appellant Harrison National Bank against Cyrus O. Austin, and others, to foreclose a mortgage given by Austin to C. C. Burr on May 31, 1890, due June 1, 1895, which note and mortgage was by Burr indorsed, assigned and delivered to appellant long before maturity. The petition is in the usual form. The answer admits the execution and delivery of the note and mortgage, and pleads payment of the sum by Edward Kuse; who purchased the premises subject to the mortgage to Burr, who, it is alleged, was the agent of appellant bank, and that such money had been paid by Burr to the bank. To this answer was filed by way of reply a general denial. Trial was had, which resulted in a finding and judgment for appellee Kuse, holding that the note and mortgage had been satisfied by the payment to Burr, and decreeing the mortgage to be no lien upon the premises. The case is brought to this court on appeal by the Harrison National Bank, and the only ques-

tion presented by the record is whether or not the decree of the trial court is sustained by sufficient competent evidence.

It is disclosed by the record that appellee Kuse paid to C. C. Burr, on the 7th day of January, 1893, long before the note was due, the face of the note and mortgage, with interest accrued up to that time. Burr executed a release in satisfaction of the mortgage, which he delivered to appellee, who placed it of record in Chase county. It is clearly established by the evidence that C. C. Burr was the agent for appellant in the matter of negotiating farm loans in Nebraska, and that during the time he acted as such agent, he placed farm loans upon land in various counties in the state to a sum amounting to about $250,000. The method which seems to have prevailed in the transaction of the business between Burr and appellant was as follows: Appellant, by J. M. Sharon, its cashier, would write a letter to Burr, directing him to send them a certain amount of farm loans; e. g., from three to ten thousand dollars' worth. Agents for Burr in different counties in the state, on being notified to do so, would take applications for farm loans, and send them to Burr at Lincoln. Such as were satisfactory to him were accepted, and he would thereupon prepare notes and mortgages to be sent to the agent to be signed and executed by the borrowers. The mortgage, when executed, would be placed of record, abstracts prepared, and the note and mortgage of the borrower, and the abstract showing the recording of the mortgage would be forwarded to Burr, who would send the papers, accompanied by a sight draft, through the First National Bank at Lincoln to appellant at Cadiz, Ohio. The testimony shows that so far as the business agency of Burr with appellant is concerned, the former did not take these applications for loans and make the loans thereon except upon orders coming to him from appellant. All of the business was transacted by Burr, and while as appears from the letters written by the officers of appellant bank, Burr was admonished to take only good, first-class farm

loans, yet it does not appear that in any instance loans sent in by him in pursuance to such orders were rejected by appellant.  Burr indorsed the notes, and usually assigned the mortgages.  The notes were payable at the First National Bank of Lincoln, Nebraska.  It is contended by appellant that it purchased these notes and mortgages in the usual course of business, and that Burr was not in any sense acting as its agent in placing the loans.  The transactions between the parties regarding the placing of loans will not bear the construction placed on their relations contended for by appellant.  It does not appear that Burr had any money invested in any of the loans; but that uniformly, after drawing a sight draft on appellant bank, would give his check to the party to whom the money was loaned.  There can be no doubt that Burr was simply acting as the agent of appellant in placing these loans.

The transactions between Burr and appellant amounted to the sum, it is claimed, of $250,000, and extended over a period of many years; at least from the spring of 1888, up to the latter part of 1894, and for a period of about a year after the loan in question was paid.  Sometimes, before the coupons upon the loans handled by Burr came due, he would send out a notice to the mortgagors, notifying them of the amount of interest, and the maturity of the same, and request prompt remittance to him at Lincoln.  The same course was followed at the maturity of the principal notes.  There seems to have been no correspondence and no business connections of any description between the borrowers of the money and appellant, but Burr seems to have had exclusive charge of the loan business in Nebraska for appellant.  Burr kept an open account with appellant bank in the name of J. M. Sharon, its cashier, which account he credited with all coupons and principal notes collected, and in which he charged appellant for all items remitted.  Burr testified that he collected more than $75,000 in the manner indicated, all of which belonged to appellant.  When mortgages became due and were not paid, Burr, in many instances, proceeded to foreclose, and took title in his own

name, and executed to appellant a mortgage and note for the amount of the original note, with interest. When mortgages matured and parties were not able to pay, in many instances Burr granted extensions, taking coupons signed by the parties, representing the accruing interest during the period of extension, and sending them to appellant. No objection was made by appellant to any of these transactions..

In Burr's testimony, he stated that he had received as many as three thousand letters from the officers of appellant bank, regarding the loan business being transacted for them by him. A number of these letters appear in the record, among which is the following, which is set out in order to explain the character of the business relations which appear to have existed between Burr and appellant: ·

"CADIZ, OHIO, Apl 21st, 1894.

*"C. C. Burr, Esq., Lincoln, Nebr.*—DEAR SIR: Your favor of the 17th inst., is received, containing New York draft for $36, which pays the balance due on the Thos. Murray $400 loan, collected by you, and I enclose you the note, mort., rel. and abst. in same.

"You say in payment of balance due on Murray and the Misner loans. If you will refer to my letter of April 13, you will see that I said balance due on the Murray loan $36, and balance due on the Misner loan $20, making $56 on the two. I see this bal. should be '$61.40. The $122 credit reported was part of the T. D. Moulton $250 note. Moulton has not yet paid all of this note.

"On another sheet I enclose you list of the loans you collected and showing credits on the same. [The accompanying list showing seventeen loans which had been collected by Burr, and payments credited thereon.] * * *

"Yours truly, [signed]     J. M. SHARON, *Cas.*"

From the correspondence in the record, and from other testimony, it is quite clearly established that Burr was permitted by appellant to manage these loans, collect both principal and interest, in all respects as though they were his own, appellant having apparently neither knowledge

nor concern about the borrowers themselves.   The officers
of appellant bank testified that these coupons and notes
were sent to Burr for payment on account of his indorse-
ment, and not for collection.   It is suggested by counsel
for appellee, and, we think, aptly, that this claim of ap-
pellant is not consistent with sound business principles,
nor is it the usual method pursued by banks having paper
for collection.   These notes and mortgages were made pay-
able at the First National Bank at Lincoln, and the uni-
form custom of appellant in sending them to Burr instead
of the bank can not be reconciled with reason and sound
business methods if the contention of appellant that they
were sent to Burr as indorser or guarantor is to be cred-
ited.   The fact that they were uniformly sent to Burr,
taken in connection with the letters from appellant to Burr
appearing in the record, showing, as they do, the custom
of looking to Burr for the collection of overdue paper,
quite conclusively establishes the contention of counsel for
appellee that Burr was the agent of appellant, and was so
regarded by it.   Appellant seems to have availed itself of
Burr's services in making these collections, placing loans
and foreclosing mortgages, until it was discovered that
Burr was in failing circumstances; and this, it appears
from the record, was a discovery made about a year after
the note and mortgage in suit had been paid.   It was then
that appellant made an investigation of its business in
Burr's hands, and found that he had misappropriated some
$16,000.   Burr testified that the officers of appellant bank
were in Lincoln on different occasions, staying in some
instances several days, visiting at his office, and that they
must have known of the manner in which he was doing
business for them.   It is true that Burr did not have the
note and mortgage in suit in his possession at the time he
made the collection; nor did he have them again after send-
ing them to appellant; but this is only one of the circum-
stances which are to be taken into consideration in de-
termining whether or not Burr was in fact the agent of
appellant in the collection of the note and mortgage in

suit. In the case of *Phœnix Ins. Co. v. Walter*, 51 Nebr.,
182, this court said: "That the party to whom money due
another is paid is not in possession of the instruments by
which the indebtedness is evidenced, is not conclusive of
the question of the authority, or lack of it, in the party
receiving the money to collect it." To the same effect is
*Estey v. Snyder*, 45 N. W. Rep. [Wis.], 415, and *Dunn
v. Hornbeck*, 72 N. Y., 80, 87. Although this note and
mortgage, as well as other farm mortgages handled by
Burr on behalf of appellant, were made payable at the
First National Bank at Lincoln, appellant saw fit to send
the note and mortgage direct to Burr for collection, and
allowed him to deal with the borrowers for a number of
years in all respects as though he was the owner of the
mortgages. In the case of *Johnston v. Milwaukee & Wyom-
ing Investment Co.*, 46 Nebr., 480, this court said: "Where
a principal has, by his voluntary act, placed an agent in
such a situation that a person of ordinary prudence, con-
versant with business usages and the nature of the particu-
lar business, is justified in presuming that such agent has
authority to perform a particular act, and therefore deals
with the agent, the principal is estopped as against such
third person from denying the agent's authority." *Holt v.
Schneider*, 57 Nebr., 523. In the case at bar, the apparent
authority with which appellant clothed Burr, even if he
was not in fact its agent, and the acceptance by appellant
of all the benefits of his acts on its behalf, is such that
justice requires that in this case appellant should sustain
the loss. It conclusively appears from the exhibits in this
case, that Burr did frequently collect both principal and
interest at the times when he did not have the notes or the
coupons in his possession, remitting the amounts collected
to appellant, who thereupon returned to him for delivery to
the borrower the canceled evidences of the debts, and who
in no instance objected to this course on the part of Burr.
In *First Nat. Bank of Wilber v. Ridpath*, 47 Nebr., 96, this
court said: "When the extent of an agent's authority is in
issue, no special instructions having been given to him,

his actual authority to do a particular act in connection with the transaction may be inferred from proof that the principal had authorized or ratified similar acts in connection with past transactions of the same character, and entrusted to the agent under similar circumstances." The testimony in the record is sufficient to establish the fact found by the trial court that Burr was the general agent of appellant in Nebraska for the negotiation and collection of farm loans which it had made through Burr, and the right to collect the note before due sufficiently appears from his custom, ratified by appellants, of granting extensions, and renewals of other loans. This he apparently did wholly without objection on the part of appellant, and his acts concerning which were ratified by appellant when brought to its notice.

It appears that the findings and judgment of the trial court are sustained by sufficient competent evidence, and are right, and it is, therefore, recommended that the same be affirmed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.