SECURITY STATE BANK, APPELLANT, v. SOULE ET AL.,
RESPONDENTS.

(No. 5,445.)

(Submitted March 15, 1924.    Decided April 16, 1924.)

[225 Pac. 127.]

*Real Property — Mortgage Foreclosure — Defense—Payment— Agency—Evidence—Appeal and Error—Correctness of Judgment—Presumption.*

Mortgage Foreclosure—Defense—Payments Made to Defaulting Agent of Mortgagee—Evidence—Sufficiency.

1. Evidence in an action to foreclose a real estate mortgage in which the defense was payment, *held* sufficient to warrant the inference that one C., who negotiated the loan and collected the payments due on the note and interest coupons but converted them to his own use, was the agent of the lender and not of the borrower, it showing, *inter alia,* that the papers were prepared by C. under the direction of the president of plaintiff bank and the money covering the loan was obtained by draft made by him upon the lender who paid the expense of preparing the abstract; that the borrower did not know from whom the loan was to be procured until the papers were executed; that the borrower did not pay any commission for securing the loan; that the lender did not demand payment though the principal was long past due if it had not been paid, and the action was not commenced until some five years after maturity of the debt; that the lender did not correspond with the borrower, the correspondence being conducted through C.; that an indorsement by the lender upon an interest coupon authorized payment to C., etc.

Appeal and Error—Correctness of Judgment—Presumption.

2. The supreme court indulges the presumption that the judgment appealed from is correct, and in aid of that presumption every legitimate inference will be drawn from the evidence.

Principal and Agent—What not Conclusive to Show That One to Whom Payments were Made by Borrower was His Agent.

3. That one, alleged to have been the agent of the mortgagee in receiving payments made by the mortgagor, did not have in his possession the note evidencing the loan and the interest coupons attached thereto when they became due and that the principal and interest were payable at the agent's office were not conclusive against the contention that he was the agent of the mortgagee, but were only circumstances to be considered in determining the question of agency.

*Appeal from District Court, Fergus County; Rudolf Von Tobel, Judge.*

ACTION by the Security State Bank against Ralph W. Soule and others. Judgment for defendants and plaintiff appeals. Affirmed.

*Mr. Ralph J. Anderson,* for Appellant, submitted a brief and argued the cause orally.

The defendant has sought to defend this action upon a plea of payment. The theory of her further answer and likewise of her proof was that payment of the principal note and the interest coupon notes was made to one B. A. Cumming, as agent for the plaintiff. The defendant having made this plea of payment, the burden of proof was on her to establish the same, and this general rule applies to an action brought on a promissory note as well as an action brought upon a simple contract for debt. (*Blinn Lumber Co.* v. *McArthur,* 150 Cal. 610, 89 Pac. 436; *Downing* v. *Donegan,* 1 Cal. App. 710, 82 Pac. 1111; *Murto* v. *Lemon,* 19 Colo. App. 314, 75 Pac. 160; *Peterson* v. *Thomson,* 78 Or. 158, 151 Pac. 721, 152 Pac. 497.) Another fundamental rule of law which is applicable to this case is that payment must be made in order to discharge the maker of a note to the holder of the note or his duly authorized agent. (*Exchange National Bank* v. *Johnson,* 30 Fed. 588; *Steuart* v. *Asher,* 15 Colo. App. 403, 62 Pac. 1051; *Walters* v. *Logan,* 3 Kan. App. 685, 44 Pac. 908; *Marling* v. *Nommensen,* 127 Wis. 363, 115 Am. St. Rep. 1017, 7 Ann. Cas. 364, 5 L. R. A. (n. s.) 412, 106 N. W. 844.)

This rule applies with like force and effect to a note secured by a mortgage. (*Marling* v. *Nommensen, supra.*) There is no claim made in the answer that the alleged agent, Cumming, ever had possession of the principal note or interest coupon notes at any time after the same were executed and the testimony of the cashier of the plaintiff bank was direct and positive that the bank had never received payment of the notes or interest coupons, the subject matter of this suit. It is a well recognized rule of law that a payment made to a person who is

not in the possession of a negotiable instrument is ordinarily made at the risk of the person making the payment. (8 C. J. 594; *Exchange National Bank* v. *Johnson,* 30 Fed. 588; *Winer* v. *Blytheville Bank,* 89 Ark. 435, 131 Am. St. Rep. 102, 117 S. W. 232; *Herron* v. *Gear,* 26 Cal. App. 18, 145 Pac. 731.)

One of the propositions urged as being proof of agency on the part of Cumming is that some proof was offered for the purpose, it was claimed, of proving that Cumming was the agent in negotiating the loan in question. It is useless to determine whether or not he was such agent, for the reason that an agency to loan money does not imply an agency to receive money in payment on the loan. (*Dodge* v. *Berkenfeld,* 20 Mont. 117, 49 Pac. 590; *Mutual Life Ins. Co.* v. *Miles,* 81 Fed. 32; *Cooley* v. *Williard,* 34 Ill. 68, 85 Am. Dec. 296; 2 C. J. 621.)

Admittedly, the notes and mortgage provided that they were payable at the office of Cumming, but this fact does not constitute Cumming the agent of the bank to receive payment of the notes and mortgage, but rather constituted Cumming the agent of the mortgagors, or their successors in interest. (Sec. 5935, Rev. Codes 1921; 8 C. J. 602; 3 R. C. L. 1289; *United States Bank* v. *Shupak,* 54 Mont. 547, 172 Pac. 324.) Furthermore, had it been established, which we do not admit that it was, that Cumming was the agent of the plaintiff to receive payments of interes it would not have constituted or implied an agency to collect the principal note. (*Cornish* v. *Wolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4.)

*Messrs. Charles J. Marshall* and *Bruce J. Johnson,* for Respondents, submitted a brief.

The appellant seems to take the position that because of the fact that B. A. Cumming did not have the first mortgage note and interest coupons in his possession for collection, the payment of the same to him did not constitute payment to the plaintiff and appellant herein. In the case of *Phoenix Ins. Co.*

v. *Walter*, 51 Neb. 182, 70 N. W. 938, the court said: "That
the party to whom money due another is paid is not in posses-
sion of the instruments by which the indebtedness is evidenced,
is not conclusive of the question of the authority or lack of it,
in the party receiving the money to collect it." To the same
effect are *Estey* v. *Snyder*, 76 Wis. 624, 45 N. W. 415, and *Dunn*
v. *Hornbeck*, 72 N. Y. 80; see, also, *Johnston* v. *Milwaukee &
Wyo. Inv. Co.*, 46 Neb. 480, 5 A. R. C. 636, 64 N. W. 1100;
*First Nat. Bank of Wilber* v. *Ridpath*, 47 Neb. 96, 66 N. W. 37.

The authority of an agent to collect and receive payment
may be either actual or apparent. The creditor is clearly
bound when payment is made by someone who is in fact his
agent to receive it, and the actual authority to receive payment
may be shown by a written or oral contract or by such acts of
the parties as establish an agency for this purpose. (*Fayette-
ville Wagon Co.* v. *Kenefick Construction Co.*, 76 Ark. 615, 88
S. W. 1031; *General Convention* v. *Torkelson*, 73 Minn. 401, 76
N. W. 215; *May* v. *Jarvis Conklin Mortgage Trust Co.*, 138
Mo. 275, 39 S. W. 782; *Norton* v. *Bull*, 43 Mo. 113; *Hefferman*
v. *Boteler*, 87 Mo. App. 316; *Doubleday* v. *Kress*, 50 N. Y. 411,
5 A. R. C. 823, 10 Am. Rep. 502.)

The case of *Harrison Nat. Bank* v. *Austin*, 65 Neb. 632, 101
Am. St. Rep. 639, 59 L. R. A. 294, 91 N. W. 540, 5 A. R. C.
835, seems to cover all of the points that have arisen in this
case, and reference is hereby made to this case, as well as the
notes in connection therewith, and which are shown in 5
A. R. C. 835 and succeeding pages.

We agree with appellant that under ordinary circumstances
the debtor takes the risk when he makes payment to one not
in possession of the evidence of indebtedness, and that this rule
applies to non-negotiable as well as to negotiable instruments,
but where one is authorized to make collections for his prin-
cipal, the fact that the securities are not in the agent's posses-
sion does not invalidate payments to him by a debtor of the

principal. (*Thompson* v. *Ware*, 200 Ala. 624, 76 South. 982; *Jones* v. *Dulick*, 8 Kan. App. 855, 55 Pac. 522.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action to foreclose a mortgage. The defense relied upon is payment. The trial court entered a judgment dismissing the complaint, and plaintiff appealed.

Aside from the exceptions hereafter noted, there is not any conflict in the evidence, and the facts surrounding the transaction are not complicated. In January, 1912, Ralph W. Soule made application to B. A. Cumming for a loan, and on February 1 following, Soule and his wife executed their promissory note for $1,200, due five years after date, with interest at seven per cent per annum, payable annually. Each of the five interest payments was represented by a coupon attached to the note. To secure the payment of principal and interest Soule and wife gave a mortgage upon 120 acres of land in Fergus county, and later sold the land to Bertha V. Gilpatrick, hereinafter referred to as the defendant, who assumed and agreed to pay the debt. At the time the application was made Soule did not know from whom the loan was to be obtained, and when the papers were presented to him for execution he ascertained for the first time that the Security State Bank of Waldorf, Minnesota, was the named payee and mortgagee. On February 4 Cumming transmitted the papers to M. S. Fisch, of Austin, Minnesota, and in the letter of transmission said: "I am inclosing herewith the following papers in connection with my real estate loan to Ralph W. Soule and wife * * * for $1,200 and have drawn on you through the First National Bank, Austin, for the amount of same, and have also drawn up the papers payable to the Security State Bank, Waldorf, Minn., as requested by you. * * * I am also inclosing my check for $30 payable to your order, being your commission at one-half

[70 Mont. 300.]

of one per cent   *   *   *   I expect to send you a $1,000 loan next Monday.   *   *   *   This is an A No. 1 loan as it is good security, and then it is a good party."

The note and each coupon recites that it is payable at the office of B. A. Cumming, Lewistown, Montana. When the first installment of interest became due, Cumming notified Soule, who paid the amount thereof to Cumming, and received from him the corresponding coupon. When the second installment became due, Cumming gave notice, and Mrs. Gilpatrick, who had then become the owner of the land, sent to Cumming a check for the amount and thereafter received from him the coupon marked "Paid Mar. 16, 1914, Security State Bank, Waldorf, Minn." When the third interest payment became due, and Cumming had given notice, Mrs. Gilpatrick sent to him a check for the amount, and in due course received the coupon, which bears the indorsement: "Pay to the order of B. A. Cumming without recourse, Security State Bank, Waldorf, Minn. W. A. Pofahl, Cashier." When the fourth interest payment became due, Cumming gave notice, and Mrs. Gilpatrick sent a check for the amount but did not receive the coupon, and finally, when the debt matured on February 1, 1917, upon notice from Cumming, Mrs. Gilpatrick sent to him a check for the principal and last interest installment but did not receive the note, coupon or a satisfaction of the mortgage. Cumming transmitted the first three interest payments to the bank, but the last two installments of interest and the principal sum he converted to his own use, to employ no harsher term.

The only question presented is, Does the evidence justify the [1]  finding that Cumming was the agent of the bank to receive payment of principal and interest? Upon the trial Cumming testified: "Well, as I remember it, those coupons were not sent to me for collection." Pofahl, the cashier of the bank, testified that he did not send any of the coupons to Cumming until the bank had received the money therefor. On the other hand,

Soule testified that when he paid the first interest installment he received the corresponding coupon from Cumming; and, though Pofahl testified in the case in chief and in rebuttal, he did not offer any explanation of the indorsement which he had made on the third coupon. Fisch was the president of the plaintiff bank, though he did not live in Waldorf where the bank conducted its business. Cumming formerly lived in Minnesota, where he was engaged in the banking business, and was well known to the officers of the plaintiff bank. Though the bank corresponded with Cumming concerning this loan, it never had any correspondence with Soule or Mrs. Gilpatrick.. After the maturity of the principal, the bank wrote to Cumming concerning the loan, and in reply received from him a letter containing false and evasive statements. It also received from Cumming his personal note, and thereupon indorsed the principal note herein "Int. paid to Feb. 15, 1918." The Soule loan was the only one procured by Cumming in which the bank was interested, and, so far as disclosed by the record, Soule did not pay Cumming anything for securing this loan. It is alleged in the complaint and admitted upon the trial that the bank paid $3 for an abstract of title which it procured.

So far as the conflicting testimony is concerned, we are satisfied that the court did not err in resolving the conflicts in favor of the defendant.

We enter upon our investigation indulging the presumption [2] that the judgment herein is correct, and in aid of that presumption every legitimate inference will be drawn from the evidence. From the record the following facts are fairly deducible: (1) The loan was made by the bank through Fisch and Cumming, long-time acquaintances, who acted in concert and who divided the commission between themselves. (2) The papers were prepared by Cumming under the directions of Fisch. (3) Soule did not know from whom the loan was to be procured until the papers were executed. (4) The money

was obtained by a draft made by Cumming on Fisch.  (5) The principal and interest were payable at the office of Cumming in Lewistown.  (6) The bank paid the expense of procuring the abstract, and Soule did not pay Cumming anything for procuring the loan.  (7) The several payments were made to Cumming, the first three of which were transmitted to and received by the bank.  (8) When the first and third installments became due, Cumming had the corresponding coupons in his possession and delivered them.  (9) The indorsement upon the third coupon authorized payment to be made to Cumming. (10) The bank had no knowledge of and no concern about the payor.  (11) The bank never demanded payment of the principal or interest from Soule or Mrs. Gilpatrick, though the principal was long past due, if it had not been paid.  (12) The bank availed itself of the services of Cumming in placing the loan and in collecting the first three installments, and apparently looked to him to collect the other installments and the principal.  (13) After the maturity of the principal debt, upon receipt of the personal note of Cumming, the bank indicated by its indorsement upon the note that the interest had been paid to February 15, 1918.  (14) The bank did not have any correspondence with Soule or Gilpatrick; its only correspondence concerning the loan was with Cumming.  (15) The action to foreclose was not commenced until more than five years after the maturity of the debt.

Considered collectively, we think the foregoing circumstances sufficient to justify the conclusion that Cumming was the agent of the bank throughout the entire transaction.  The fact that the note and coupons were payable at the office of Cumming, [3] and the further fact that Cumming did not have in his possession the fourth coupon or the note and the last coupon when they respectively became due, militate against our conclusion; but, after all, these are but circumstances to be considered in determining the question of agency (*Phoenix Ins.*

*Co.* v. *Walter,* 51 Neb. 182, 70 N. W. 938), and in our judgment the full force to be given to them is overcome by the other facts disclosed.

In 2 C. J. 446–448, it is said: "In the negotiation of loans it is often difficult to determine whether an intermediatory is the agent of the borrower or of the lender. Each case must be decided upon its own particular circumstances, and, although certain facts have been held to constitute the intermediary the agent of the borrower, or lender, as the case may be, these facts are not necessarily conclusive on the question of agency, and will not preclude the alleged principal from showing that the intermediary was actually acting as the agent of the other party, or as the agent of each, but for different purposes. * * * If a money lender employs the intermediary to negotiate loans, to examine the title to property offered as security, to see that the property is discharged from prior encumbrances, to prepare the papers and see to the execution thereof, to pay over the money to the borrower, or to perform other services in regard to the loan, these facts, taken collectively, or in various lesser combinations, justify an inference that the intermediary is the agent of the lender. If the lender pays the intermediary's commission, it tends to establish an agency in the lender's behalf, and, if the service is performed at the request and by the direction of the lender, presumptively the agent is his agent."

Although we have not found any decided cases directly in point, the following authorities in principal sustain our conclusion: *Colwell* v. *Grandin Investment Co.,* 64 Mont. 518, 210 Pac. 765; *Mortgage Co.* v. *Gillam,* 49 S. C. 345, 26 S. E. 990, 29 S. E. 203; *Jensen* v. *Lewis Investment Co.,* 39 Neb. 371, 58 N. W. 100; *Harrison National Bank* v. *Austin,* 65 Neb. 632, 101 Am. St. Rep. 639, 59 L. R. A. 294, 91 N. W. 540; *Matteson* v. *Blackmer,* 46 Mich. 393, 9 N. W. 445; *Mc-*

*Lean* v. *Ficke,* 94 Iowa, 283, 62 N. W. 753; *Stockton* v. *Watson,* 101 Fed. 490, 42 C. C. A. 211.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Galen and Stark concur.