TUCKER, RESPONDENT, *v.* MISSOULA LIGHT & RAILWAY CO., ET AL., APPELLANTS.

(No. 5,962.)

(Submitted September 16, 1926.   Decided October 4, 1926.)

[250 Pac. 11.]

*Water Rights—Diversion of More Water Than Needed—Remedies—When not Exclusive—Water Commissioner—Burden of Proof—Damages—Excessive Verdict—Appeal and Error—Correctness of Judgment—Presumptions.*

Water Rights—Impairment—Water Commissioner—Statutory Remedy not Exclusive.
   1.  Under the rule that a special statutory remedy is not exclusive but cumulative only, unless the intention to make it so is clearly manifest or it is entirely adequate for the protection of pre-existing rights, *held*, that Chapter 27, Part. IV, Civil Code [secs. 7136 *et seq.*, Rev. Codes 1921] providing for the appointment of a water commissioner and prescribing his duties and powers, does not provide an exclusive remedy for one whose water rights have been impaired and therefore does not preclude him from maintaining an action for damages.
Same—Failure to Install Headgates—Effect on Right of Plaintiff to Complain.
   2.  Section 7151, Revised Codes, requiring the installation of headgates and measuring boxes in ditches by persons using water from a stream under a decree where a water commissioner has been appointed, is in the nature of a police regulation, under which the commissioner may refuse to distribute water to one who fails to do so, but does not license a stranger to appropriate water to his own use therefrom merely because an owner of a right has not complied with such requirement.

---

1.  See 1 R. C. L. 323.

**Same—Right of Owner to any of Several Ditches.**

3. Where an owner of a water right had several ditches for the irrigation of his lands, he had a right to use any of them at which he had a headgate so long as other users were not injured thereby.

**Actions—Burden of Proof.**

4. Under section 10616, Revised Codes of 1921, the party asserting a right in any case has the burden of proving each of the material allegations of his cause of action.

**Water Rights—Extent of Right of Owner.**

5. Neither the appropriator of water nor one to whom a right is decreed owns the *corpus* of any part of the flow of a stream; he is entitled only to the beneficial use of the amount of water called for by his appropriation or the decree when he has need therefor, provided his distributing system has a sufficient capacity to carry that amount; if incapable of carrying that amount, his right is measured by the capacity of his system of distribution regardless of his needs.

**Same.**

6. Where a party who has all the water his necessities require or that his ditches will carry it is immaterial that he has a right, under decree or otherwise, to a greater flow from the stream; he must permit the excess to remain therein or, having diverted it, return it thereto in such a manner that it will be available to subsequent appropriators.

**Same—Defendant Diverting More Water Than Needed—Burden of Proof.**

7. In an action for damages for the wrongful diversion of water against a company supplying a city with water, brought on the theory that it diverted more water than it could convey to the city and permitted the excess to run over the spillway at its dam, plaintiff had the burden of proving his need for water as well as his right thereto, his ability to use it through his system of distribution, and also that defendant diverted more water than its needs required or its pipe-line could accommodate, regardless of its decreed rights to a greater flow.

**Appeal and Error—Presumption of Correctness of Judgment.**

8. On appeal in a case in which the sufficiency of the evidence is challenged, every presumption is in favor of the correctness of the judgment, and in aid of that presumption every legitimate inference must be drawn from the evidence.

**Water Rights—Evidence—Sufficiency.**

9. Evidence reviewed and *held* to support the judgment in favor of plaintiff, it appearing that plaintiff had the right to the use of a certain number of inches; that he had need for that amount, with ample means for its use; that there was more than enough water in the stream to supply all prior rights as well as his own; that defendant diverted an amount far in excess of what it could use, and that but for such wrongful use plaintiff's crops would have been saved.

**Same—Quantum of Water Necessary Per Acre—Question of Fact.**

10. The question as to what amount of water is necessary per acre for irrigation is one of fact and never one of law, not-

---

3. See 27 R. C. L. 1279.
4. See 10 R. C. L. 808.
5. See 27 R. C. L. 1276.

withstanding the adoption of the rule generally in this state to allow an inch to the acre, in the absence of evidence warranting a greater or less award.

Same—Wrongful Diversion—Damages—What not Proper Element.

11. The purchase price of land or its value cannot affect the value of crops raised thereon, hence the contention that the verdict in an action for damages for the wrongful diversion of water was so excessive that it must have been given under the influence of passion and prejudice, since the damages for a partial loss of crops exceeded the purchase price of the land including the water right, cannot be sustained.

Same—Excessive Verdict—When Contention not Maintainable.

12. Where witnesses for plaintiff, who had verdict, testified that his crop losses suffered by the wrongful diversion of water to which he was entitled, amounted to as much as $45,000, and defendant did not attempt to show how that amount could be reduced to one less than the verdict, $22,726.90, the award cannot be said to have been excessive.

---

[1]  Actions, 1 C. J., sec. 101, p. 989, n. 75, 78. Pleading, 31 Cyc., p. 54, n. 8; p. 251, n. 80. Waters, 40 Cyc., p. 729, n. 77; p. 730, n. 86 New.

[2]  Waters, 40 Cyc., p. 704, n. 11 New; p. 729, n. 77.

[3]  Waters, 40 Cyc., p. 720, n. 19.

[4]  Evidence, 22 C. J., sec. 14, p. 68, n. 43.

[5, 6]  Waters, 40 Cyc., p. 713, n. 74; p. 715, n. 88; p. 716, n. 94; p. 717, n. 98.

[7]  Waters, 40 Cyc., p. 733, n. 25, 26.

[8]  Appeal and Error, 4 C. J., sec. 2662, p. 731, n. 81; sec. 2739, p. 786, n. 29, 31.

[9]  Pleading, 31 Cyc., p. 266, n. 26. Waters, 40 Cyc., p. 722, n. 27; p. 734, n. 32.

[10]  Waters, 40 Cyc., p. 734, n. 33 New.

[11]  Waters, 40 Cyc., p. 733, n. 26.

[12]  Waters, 40 Cyc., p. 733, n. 26.

*Appeal from District Court, Missoula County; Theodore Lentz, Judge.*

Action by L. E. Tucker against the Missoula Light & Water Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

*Mr. Fred J. Furman* and *Mr. W. M. Bickford,* for Appellants, submitted a brief; *Mr. Furman* argued the cause orally.

*Mr. S. P. Wilson* and *Messrs. Mulroney & Mulroney,* for Respondent, submitted a brief; *Mr. Wilson* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment on verdict in the sum of $22,726.90 damages for the wrongful and unlawful diversion and use of water during the irrigating seasons of 1922, 1923 and 1924.

The complaint contains three causes of action, one for each of the years mentioned, which are practically identical, except as to the dates and the damages alleged to have been suffered. Each cause of action alleged that at the times mentioned plaintiff was in the lawful possession of 1,356 acres of land in sections 2, 11, 12, 13 and 14, in township 13 north of range 19 west in Missoula county, of which 175 acres were arid agricultural lands requiring water for irrigation, but which, with proper irrigation, would produce abundant crops of hay, grain and corn; that in each of said years approximately 150 acres of this land were seeded to grain as a nurse crop, and with such seed was also sown alfalfa seed, and approximately 18 acres thereof were planted to corn; that appurtenant to said land, and for the irrigation of said crops, plaintiff was entitled to the use of 377 miner's inches of the waters of Rattlesnake Creek, which stream passed through said lands, and that at all times mentioned in the complaint the flow of said creek was sufficient to supply the rights of plaintiff after those of all prior appropriators were satisfied. Each of said causes of action then alleged that on the first day of July of the year mentioned all of said crops were in good condition, and had had sufficient irrigation, but then required further water, with which the land would have produced bountiful crops. It is then alleged in each of said causes that, on or about the first day of July of the year mentioned, the defendant closed plaintiff's ditches, and wrongfully and unlawfully diverted all of the water to its own use, and refused to permit plaintiff to take or to use any of the waters of said creek, though he repeatedly requested and demanded the same, and that by reason of such wrongful and unlawful acts of the defendant all of

such crops, in each of said years, were destroyed, to plaintiff's damages in sums aggregating approximately $47,000.

By answer the defendant denied all of the above allegations, and set up an affirmative defense to each of the causes of action contained in the complaint. Each of these separate defenses pleaded a judgment and decree of the district court of the fourth judicial district rendered in 1903, fixing and determining the water rights and priorities thereof in and to the water of Rattlesnake Creek, and alleged that said decree had become final and was binding upon plaintiff, and that, under said decree, defendant was entitled to the prior use of 2,676 miner's inches of said waters.

The affirmative defenses to the first and third causes of action are, with the exception of dates, identical. Each alleged that in the year mentioned a water commissioner was duly appointed, qualified and acting, and that under his distribution the defendant received no more water than it was entitled to under the decree; that the commissioner reported to the court, and his report was duly approved and became binding upon plaintiff. The period of this service in 1922 was given as from July 26, to August 25, and in 1924 as from August 9 to October 4.

As to the second cause of action, paragraph IV of the affirmative defense alleged that defendant was the owner of, and operated, a water system which furnished water to the people of the city of Missoula and vicinity for domestic, irrigation and other purposes, and that "such water so furnished and sold is and was necessary for all of the above purposes during all of the time or times herein mentioned."

Paragraph VI of said defense then alleged that the plaintiff did not, at any time during the season of 1923, notify defendant that he required water for irrigation; that no water commissioner was appointed for said stream; that plaintiff did not seek to secure such appointment, and that, by his failure "to avail himself of the rights and authority conferred

upon him by law,   ❂  ✳  ✳  '' plaintiff was precluded from complaining of his failure to obtain water in that year.

By his reply the plaintiff admitted the entry of the final decree pleaded and the appointment and service of a water commissioner in 1922 and 1924, as alleged; denied specifically the allegation that in those years the defendant received no more water than it was entitled to under the decree; affirmatively alleged that he was greatly in need of water prior to the distribution by the water commissioner; and denied generally all allegations contained in the answer not admitted in the reply. As to the affirmative defense to the second cause of action, the reply admitted that the defendant operated the water system which supplied water to the people of Missoula, and denied all other allegations of paragraph IV thereof, and specifically denied the allegations of paragraph VI set out above.

On the trial of the issues, the defendant introduced no evidence, and all of the testimony on behalf of the plaintiff stands uncontradicted, except as discrepancies may appear therein. At appropriate stages of the trial the defendant objected to the introduction of certain testimony; moved that certain evidence be withdrawn from the consideration of the jury; moved for judgment of nonsuit and for a directed verdict; and, after judgment, moved for a new trial. In each instance the court ruled against defendant's contention.

Defendant's brief contains fourteen specifications of error. Counsel, however, have contented themselves with a general argument, under three heads, in which they discuss certain questions raised by the objections interposed and the motions made and on the adverse rulings on which certain of these specifications are predicated, while other specifications are not argued, and, apparently, have been abandoned. The questions thus presented will be disposed of in logical order.

1. Specifications 1, 2 and 3 predicate error upon the over-
[1] ruling of defendant's objection to the introduction of

testimony on the ground that, as plaintiff did not avail himself
of his statutory right to apply for the appointment of a water
commissioner, he is in no position to complain that he did
not get the water to which he was entitled under the decree
fixing the priorities on the creek.

Chapter 27, Part IV, of the Civil Code of Montana, as it
existed prior to its amendment in 1925 (Laws of 1925, Chap.
125, p. 215) governed the appointment of a water commis-
sioner for adjudicated streams at all times mentioned in the
pleadings. Section 7136, found in this chapter, provides for
the appointment of such commissioner upon the application of
the owners of at least ten per cent of the water rights affected
by the decree.

The admissions in the pleadings establish the fact that the
rights on Rattlesnake Creek had been decreed, but the record
discloses that the decreed rights total in excess of 4,000 inches
of water, and that the plaintiff was not the owner of ten per
cent thereof. It is therefore apparent that the plaintiff, acting
alone, could not have secured the appointment of a water
commissioner, nor is it shown that he could have secured the
co-operation of any other water user or users entitled to join
in an application.

In their brief, counsel assert that "it is alleged and not
denied, that it was the duty of the plaintiff to apply to the
court  *  *  *  for a water commissioner in the year 1923,"
*etc.*, and that, by failure to avail himself of his rights in this
respect, he was thereafter precluded from complaining of any
deprivation. The only allegation with reference to plaintiff's
failure to act in 1923 is found in paragraph VI of the affirma-
tive defense to his second cause of action, quoted in part above.
That paragraph was denied *in toto,* and there is therefore no
admission of such duty resting upon plaintiff. However, the
allegation of such duty raised a question of law rather than
fact.

77 Mont.—7

Counsel for defendant assert that the water code of Montana is "so complete a remedy for all water uses and for all wrongful uses of water on an adjudicated stream that it seems self-evident that the legislative assembly  *  *  *  intended and designed this code as an exclusive remedy." We do not so view the statutes to which reference is made.

A special statutory remedy is not exclusive, unless such intention is clearly manifest. It is merely cumulative, unless a contrary intention clearly appears, and it cannot be otherwise than cumulative, unless it is entirely adequate for the protection of pre-existing rights. (*Jaffe* v. *Fidelity Co.*, 7. Ala. App. 206, 60 South. 966; 1 C. J. 988; 1 R. C. L. 323.)

The right to sue for damages for the invasion of a right existed under the common law, and exists under our Code (sections 8659 and 7097, Rev. Codes 1921), and the statutory remedy referred to by counsel must, if it is to supersede such right of action, be entirely adequate to protect the rights of owners of decreed rights at all times. A careful reading of the chapter discloses that it does not require the appointment of a water commissioner on all adjudicated streams and for all seasons. It is only on application of at least ten per cent of the owners under the decree that the court is required to appoint such a commissioner. It was clearly intended only for the protection of prior rights in time of need. This remedy does not protect the owner of an adjudicated right from deprivation before the appointment of the commissoner, nor does it afford him adequate relief for the unlawful diversion of his water during the administration of a water commissioner. It is true that under the authority vested in him by section 7143, Revised Codes of 1921, the commissioner may arrest an offender for interference with such distribution, and take him before the court for punishment, but such action does not in any manner compensate the party injured by the unlawful act of the culprit.

It is therefore manifest that the remedy provided for in Chapter 27, Revised Codes of 1921, above, is but cumulative (*Van*

*Buskirk* v. *Red Buttes Co.,* 24 Wyo. 183, 156 Pac. 1122, 160
Pac. 387), and the fact that plaintiff did not avail himself
of the provisions of the chapter does not preclude him from
maintaining this action.

2. It is next contended that, as both the statute (sec. 7151,
[2]   Rev. Codes 1921) and the decree required the installation
of headgates for the measurement of the water used by the
several owners, and the evidence disclosed that plaintiff had
not installed headgates in his ditches through which he de-
sired to use water, he could not complain of the action of
defendant.

The section cited requires the installation of headgates and
measuring-boxes only by "all persons using water under a
decree from any stream whereon a water commissioner is ap-
pointed." It is in the nature of a police regulation in aid
of the water commissioner. (Wiel on Water Rights, 3d ed.,
Vol. 2, sec. 1189.) It authorizes the water commissioner to
refuse to distribute water to a user failing to comply with the
requirement, but cannot be construed to license a stranger to
appropriate to his own use water to which he is not entitled,
merely because the owner thereof has not installed a measuring
device in his ditch.

Whatever the effect of the requirement found in the decree,
[3]   the testimony shows that plaintiff did have a headgate
in his upper ditch, from which he could have irrigated all
of his cultivated land. So far as the evidence discloses, plain-
tiff had a right to use his water through this ditch if he saw
fit. He claimed the right to use his water through any of
his ditches, and, in the absence of a showing that others were
injured thereby, our Codes accord him that right. (Sec. 7095,
Rev. Codes 1921; *Thomas* v. *Ball,* 66 Mont. 161, 213 Pac. 597.)
There is, therefore, no merit in this contention.

3. Specifications 4, 5, 6 and 7 are predicated upon the court's
rulings on objections to questions propounded to witnesses.
These specifications are not argued, and, in passing them, coun-
sel state that the rulings are "doubtless of no grave import,

standing alone." We have examined the record, and find that no reversible error was committed in the rulings mentioned.

4. Specification numbered 9 is predicated upon the court's refusal to limit the jury's consideration to plaintiff's right to forty-five inches of water, being a part of the fifth right under the decree. This specification is not urged in the brief or in oral argument. From what is said hereafter, the motion to so limit the effect of the testimony was not without merit, but the court's failure so to do could have had no effect upon the verdict.

The remaining specifications are predicated upon the court's action in overruling defendant's motion for nonsuit, for directed verdict, and for a new trial, and under them it is contended that the evidence is insufficient to support the verdict and judgment; that the verdict is contrary to the evidence and against law, and is so excessive as to warrant the conclusion that it was rendered as the result of passion and prejudice.

5. On their contention that the evidence was insufficient to support the verdict, counsel assert that the burden rested upon the plaintiff to establish by credible evidence (a) that he was entitled to water from Rattlesnake Creek; (b) that there was sufficient water in the stream to supply all prior rights and his own; (c) that the defendant diverted and prevented the plaintiff from receiving his water; (d) that such diversion was wrongful; and (e) that plaintiff was damaged thereby.

It is elementary that in any case the party asserting a right [4] has the burden of proving each of the material allegations of his cause of action. (Sec. 10616, Rev. Codes 1921; *Smith* v. *Duff,* 39 Mont. 374, 133 Am. St. Rep. 582, 102 Pac. 981; *De Sandro* v. *Missoula Light & Water Co.,* 48 Mont. 226, 136 Pac. 711.)

The defendant does not allege what amount of water was [5, 6] necessary for its use, except as to water distributed to its customers in 1923, dealt with above, and it seems to have proceeded upon the theory that, as it had decreed rights aggregating 2,676 inches, the assertion of those rights was a de-

fense to the charge of wrongfully diverting water to that extent; that up to that amount it could use the waters of the creek as it saw fit. This theory is akin to the assertion, by laymen, of the right to use the full amount of their decreed rights so long as they have need thereof, and then to rent or sell a like amount to their less fortunate neighbors for an additional period of time. These assertions seem to be in direct conflict with the provisions of section 7097 of the Revised Codes of 1921, which declare that—"In all cases where, by virtue of prior appropriation, any person may have diverted all the water of any stream, or to such an extent that there shall not be an amount sufficient left therein for those having a subsequent right to the waters of such stream, and there shall, at any time, be a surplus of water so diverted, over and above what is actually and necessarily used, * * * such person shall be required to turn, and cause to flow back into the stream, such surplus water," *etc.*

The so-called "ownership" of water differs from that of personal property capable of corporeal possession. Neither the appropriator of water nor one to whom a right is decreed owns the *corpus* of any part of the flow of the stream. He is entitled only to the beneficial use of the amount of water called for by his appropriation or decree when he has need therefor, and providing his distributing system has a sufficient capacity to carry such an amount of water. (*Creek* v. *Bozeman Water Works Co.*, 15 Mont. 121, 38 Pac. 459.) When his ditches are incapable of carrying the amount of water decreed to him, his right is measured by the capacity of his system of distribution, regardless of his needs. (Sec. 7094, Rev. Codes 1921; *Norman* v. *Corbley*, 32 Mont. 195, 79 Pac. 1059; *Mettler* v. *Ames Realty Co.*, 61 Mont. 152, 201 Pac. 702; *Jacobs* v. *City of Harlowton*, 66 Mont. 312, 213 Pac. 244.) So long as a party has all the water his necessity requires or that his ditches will carry, it is immaterial that he has a right, under decree or otherwise, to a greater flow from the creek. It is his duty to permit the excess to remain in the creek or, having diverted it, to return

it to the creek in such manner that it will be available to subsequent appropriators of decreed rights. (Sec. 7097, above; *Zosel* v. *Kohrs,* 72 Mont. 564, 234 Pac. 1089; *Huffine* v. *Miller,* 74 Mont. 50, 237 Pac. 1103.)

In sustaining the burden of proof above referred to, it was [7] therefore necessary that plaintiff prove his need for the water as well as his right thereto and his ability to use the same through his system of distribution, and, in order to show that the defendant wrongfully diverted the water, plaintiff was required to show only that it diverted more water than its needs required or its system of distribution would accommodate, regardless of whether it had decreed rights to a greater flow or not.

It must be borne in mind that the sufficiency of the evidence [8] was challenged in the trial court by motion for nonsuit, by motion for directed verdict, and by motion for a new trial, and that the trial court, having heard the evidence and observed the witnesses on the stand, held in favor of its sufficiency; that every presumption is in favor of the correctness of the judgment; and that in aid of that presumption every legitimate inference must be drawn from the evidence. (*Security State Bank* v. *Soule,* 70 Mont. 300, 225 Pac. 127.)

The record shows that the defendant had acquired certain [9] rights in and to Rattlesnake Creek. It was the owner of a dam and reservoir situated at the center of section 2 in township 13, north of range 19 west, and in the channel of the creek in question. Water from this reservoir was conducted to a second reservoir near Missoula by means of a pipe-line from the base of the dam. The plaintiff irrigated his cultivated land by the diversion of water from the stream through one or more of the following described ditches: The upper Tucker ditch, the middle Tucker ditch, and a lateral known as the "Tucker-Parker" ditch, which diverted water from the Williams ditch; the head of each of these ditches being above defendant's point of diversion. The land in this vicinity

sloped from east to west. The creek lies to the west of all of plaintiff's cultivated land, and a county road crosses all of these ditches to the west of such lands. A fourth ditch, known as the Cobban ditch, in which plaintiff has an interest with several other water users, diverts water from the creek at a point below defendant's reservoir and dam. The upper ditch covers all of plaintiff's cultivated land; the middle ditch all but about forty acres; the Tucker-Parker lateral and the Williams ditch certain portions thereof, while the Cobban ditch, below the reservoir, at the times complained of, covered approximately twenty acres thereof.

The decree on said creek awarded to the predecessors in interest of the defendant 2,676 inches of water, and to the predecessors of the plaintiff approximately 350 inches. However, under the proof submitted and the instructions of the court, the only decreed rights which could be considered by the jury were the first, second and third rights, now owned by defendant, aggregating 1,119.5 inches; the fourth right of seventy-five inches, not involved in this suit; the fifth right, under which defendant had the right to the use of 115 inches and the plaintiff forty-five inches; the sixth right of twenty inches, not involved in this suit; the eighth and ninth rights under which defendant was entitled to the use of 394.5 inches; and the tenth right, under which the plaintiff was entitled to the use, when available, of forty inches, and strangers to the suit were entitled to the use of 105 inches.

All of the rights of the defendant were used for supplying water to the city of Missoula and vicinity, with the exception of this fifth right calling for 115 inches, which was used for the irrigation of a ranch owned by defendant and lying between two tracts of plaintiff's cultivated land.

The testimony further showed that plaintiff's crops were properly planted, cultivated and irrigated up to July 1 of each of the years mentioned, and were then in good condition, and would have produced bountiful crops, provided they had

been properly irrigated during the month of July of each of said years. It showed the prospective production therefrom and its value, with the cost of harvesting and disposal and the use to which it would have been put, as well as the pasturage which would have been left thereon after the crops were harvested, and for which plaintiff had use in the conduct of his dairy business. It then showed the actual production for each of said years and the value thereof.

It further appears that on or about the first day of July in each of said years the defendant closed all of plaintiff's ditches, and, although he often reopened them, the defendant kept a man on the creek who shut them off as fast as he opened them; that he went repeatedly to the agents and the manager of defendant company, and requested and demanded water for the irrigation of his crops, but each time was refused; that in one conversation the manager told him that the water belonged to the company  and that it would do with that water as it saw fit, running it into the river if it wanted to.  He was positive on his direct examination that he got no water during the month of July of each of said years, and that the reason therefor was that the defendant company took all of the water  and refused to let him have any of it; that in the years when a water commissioner distributed the water in accordance with the decree the entire damage complained of had resulted prior to the time the commissioner went on the creek; and that any water he might have received thereafter would not have improved the crops.  Plaintiff further testified that, with irrigation through the month of July, his crops would have yielded bountifully, and that, owing to the advantageous slope of the ground, the nature of the soil, the shade afforded by the growing crops, and the method he employed in cultivation, forty or fifty inches of water throughout the month of July of each year would have been ample for his needs.

In 1924, for the purpose of repairs on the reservoir, defendant diverted water from the creek through an open flume,

which conducted it to a "sand house" from which it entered the pipe-line to Missoula. On August 7, 1924, competent engineers made measurements which disclosed that the flume was then carrying 1,344 inches of water, with a seepage of 40.32 inches; that the capacity of the pipe-line was but 1,144.8 inches; and that 199.2 inches were returned to the creek through a "spillway" at the sand house; and that at the same time 327.6 inches of water was being diverted through the ditches having their intake above the point of defendant's diversion. Plaintiff testified that the creek's high-water season ended about the middle of July of each year, and that the flow remained the same, or decreased thereafter, until in the month of September it again increases, and, further, that the flow in the years 1922 and 1923 was approximately the same as in 1924.

Checking this testimony against the requirements above enumerated, and in the light of the rules laid down, it proved or tended to prove: (a) That plaintiff had a right to the use of at least forty-five inches of the waters of the creek, when needed, and that at all times complained of he had urgent need for that amount of water, with ample means for its use; (b) that, as at all times of which complaint is made, the flow of the creek was at least 1,642.32 inches, and all prior decreed rights, with those equal to his own and his right of forty-five inches, totaled 1,354.5 inches, there was more than enough water in the creek to supply all prior rights and his own; (c) that defendant diverted all of the waters of the creek, or 1,642.32 inches; and (d) as that amount was far in excess of the amount to which it was entitled, such diversion was wrongful and unlawful; (e) that all of the damage shown resulted from the wrongful acts of the defendant at times when no water commissioner was serving on the creek, and plaintiff's forty-five inches of water would have been ample to prevent the loss suffered. It is therefore apparent that there was substantial evidence adduced to warrant the verdict and judgment, and with the action of the court and jury we cannot interfere.

6. Counsel, however, assert that the defendant had a right to all of the water it diverted, basing the assertion upon the fact that it had decreed rights other than those here considered, and that it alleged its need for all thereof, which allegations were admitted by plaintiff's reply.

As heretofore pointed out, the mere fact that defendant was the owner of decreed rights on the stream is no defense, in the absence of a showing of need for the amount of water taken, and a showing of subsequent rights cannot justify the taking of water to which another user is entitled under a decree prior to those rights.

Further, the pleadings do not justify counsel's assertion as to the allegations of the defendant and admission of the plaintiff. The only allegation of defendant's need is found in paragraph IV of its affirmative defense to the second cause of action, referred to above. The paragraph alleges: (1) That the defendant was the owner and operator of a water system, selling and furnishing water to the people of Missoula and vicinity for domestic, irrigation and other purposes; and (2) that the water so sold and furnished "is and was necessary for the above-named purposes." As only the water carried through the pipe-line to the city and vicinity could be used for the purposes mentioned, this allegation, at most, alleged that the amount so diverted—or 1,144.8 inches—was necessary for those purposes in the year 1923, while the proof shows that several hundred inches additional were diverted, but even this allegation is not admitted by plaintiff. By his reply he admits that part of the paragraph numbered (1) above, and denies all other allegations therein contained.

7. Defendant next contends that plaintiff failed to show that he was deprived of his water, as on cross-examination he admitted that, at times, from fifteen to twenty inches of water entered his middle ditch, and at some times he saw as much as fifty to sixty inches therein; that at least 100 inches of

water were permitted to flow into the Williams ditch; and that water was available in the Cobban ditch at all times.

The testimony referred to, concerning the middle ditch, was given with reference only to the year 1922, and then only when the defendant's agents were unable by reason of high water, the interference of the plaintiff, or other causes, to exclude all of the water from the ditch, although they made earnest efforts to do so, and, when such water did get into his ditch, it did not cross the road, and consequently reached none of his cultivated land. The lesser amount might not have been sufficient to reach plaintiff's crops, while his right of forty-five inches would have done so. As to the time when there were from fifty to sixty inches in the ditch, it does not appear whether that condition continued for days, hours or merely for minutes before the defendant's ditchman again filled in the ditch.

As to the Williams ditch, the amount flowing therein was not sufficient to supply defendant's right through that ditch, and the fair inference from the testimony is that the defendant prevented plaintiff from using any of the water diverted through that ditch by means of his lateral therefrom.

The Cobban ditch was below the reservoir. It covered but a small fraction of plaintiff's land. Other users took water from it, and plaintiff's testimony was that he got no water through that ditch. He could not be compelled to accept the water to which he was entitled, through it, and, had he had water through the ditch, it would have affected but twenty acres of his crops.

These admissions, if given their greatest possible force, could but go to a reduction of damages suffered, and could not defeat either of the causes of action.

8. Finally it is insisted that the verdict is excessive, and was given under the influence of passion and prejudice. In support of this contention counsel assert that the plaintiff's testimony to the effect that his forty-five inches right would have

been ample for the irrigation of his crops throughout the month of July in each year is not worthy of belief, and should be discredited by this court, citing *Warren* v. *Senecal,* 71 Mont. 210, 228 Pac. 71; that this court should take judicial notice that irrigation requires at least one inch to the acre; and that his forty-five inches would irrigate but a like number of acres.

The answer to this argument is that the testimony is undisputed in the record, and does not apply to the amount of water necessary for the irrigation of crops throughout a season, but only to the necessity existing after the first of July in each year and under the conditions related. It may well be that, by intensive methods and compelling water to perform its utmost duty, much less than one inch per acre may suffice for the cultivation of crops throughout a season, and it may be a fact, well known among expert farmers, that, after crops are well up, a much smaller amount of water is necessary for their maturing than is necessary during the early stages of their growth; the testimony of the plaintiff would seem to so indicate, and, if this was not so, the court was open to the defendant to contradict the testimony given by experts on the subject, on which a contrary finding might have been made.

The question of the amount of water necessary per acre for [10] irrigation is one of fact for the court or jury, and can never be considered a question of law for the courts, although the rule has been adopted generally in this state to allow an inch to the acre, in the absence of evidence warranting a greater or less award. (*Conrow* v. *Huffine,* 48 Mont. 437, 138 Pac. 1094.) The evidence was addressed to the jury, and we cannot say that it was so incredible as not to be entitled to belief.

It is asserted that the amount of the verdict shows that it [11] was given under the influence of passion and prejudice, and it is pointed out that the damages awarded for a partial loss of crops would equal or exceed the purchase price of the land on which the crops were grown, including the water right.

The purchase price of the land, or its value, cannot affect the value of crops raised thereon. It is not beyond the realm of possibility that a purchaser might pay the entire purchase price of his land and water right out of three years' crops. The question for determination is whether, under the evidence adduced, the amount awarded is justified.

A tabulation of the figures given by the witnesses for plaintiff [12] as the losses suffered shows a total in excess of $45,000, or double the amount of the verdict, and, while there may be duplications by reason of testimony concerning loss of crops and loss of income from the sale of dairy products, loss of crops, and amounts necessary for the purchase of substitutes, by no means available to us have we been able to reduce the proved damages to an amount less than the verdict, nor has counsel for defendant attempted to do so. It cannot, therefore, be said that the verdict is excessive.

For the reasons stated, and as no reversible error appears in the record, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES GALEN and STARK and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, concur.

Rehearing denied October 20, 1926.