COWAN ET AL., RESPONDENTS, *v.* BROWNE, RECEIVER,
APPELLANT.

(No. 4,585.)

(Submitted January 7, 1922. Decided April 5, 1922.)

[206 Pac. 432.]

*Contracts—Consideration—Forbearance to Sue—Complaint—*
*Sufficiency — Evidence — Admissibility — General Denial—*
*Nonsuit.*

Contracts—Consideration—Forbearance to Sue—Complaint—Sufficiency.
   1. While mere forbearance to sue, without an agreement to that
   effect, is not a sufficient consideration for a promise to pay another's
   debt, such an agreement may be implied from an actual forbearance
   in connection with other circumstances alleged in the complaint plead-
   ing such an agreement.
Same — Consideration — Forbearance to Sue — Implied Agreement — Com-
   plaint—Sufficiency.
   2. Where the complaint in an action on an oral agreement of a
   bank to pay the debt owing plaintiffs by another if they would for-
   bear to sue the debtor did not expressly allege such an agreement
   but did set forth a promise by the bank that if plaintiffs would not
   sue or attach the property of the debtor which had been taken over
   by it the debt would be paid from the balance remaining after satis-
   faction of the bank's claim, *etc.*, it sufficiently alleged an implied
   agreement to forbear.
Trial—Nonsuit—What Deemed Proved.
   3. On a motion for nonsuit, everything plaintiff's evidence tends to
   prove is deemed proved.
Contracts—Promise to Pay Another's Debt Out of Proceeds of Sale of
   Property—Offer of Proof—Improper Exclusion.
   4. In an action to recover on a bank's promise to pay plaintiff's
   claim against a debtor whose property it had taken over, from the
   balance remaining after applying the proceeds of sale to the satis-
   faction of its claim against him, an offer of proof consisting of
   mortgages, *etc.*, tending to show the amount owing by the debtor to
   others than the bank, and that after deducting such indebtedness
   and that due it from the proceeds of the property an insufficient
   balance remained to pay the amount due plaintiffs, was improperly
   excluded.
Same—Promise to Pay Another's Debt—Evidence—Improper Admission
   Under Pleading.
   5. In the absence of allegation in plaintiffs' complaint that the
   bank's promise to pay their claim was unconditional and not de-
   pendent on the realization of sufficient to pay the debts owing to it
   and others, evidence that the promise was unconditional was improp-
   erly admitted.

Same—"Gross" or "Net" Proceeds of Sale of Property—Construction of Contract.

6. Where one agrees to pay a debt out of the "proceeds" of a sale of property, the question whether the parties meant gross or net proceeds depends upon the context of the agreement and the subject matter to which the word is to be applied.

Same.

7. *Held,* under the above rule (par. 6) that the bank's promise to pay plaintiffs' claim out of the "proceeds" of the sale of their debtor's property meant the proceeds remaining after certain mortgages and judgments against the debtor which were of record and with the existence of which the parties were charged were deducted from the amount realized.

Same—General Denial—Evidence Admissible.

8. Under the general denial of defendant bank, evidence of outstanding mortgages and judgments against the debtor was admissible as tending directly to contradict plaintiffs' allegation that there was a balance remaining from the proceeds of the debtor's property sufficient to pay their claim.

*Appeals from District Court, Hill County, in the Eighteenth Judicial District; Jack Briscoe, a Judge of the Tenth District, presiding.*

ACTION by David Cowan and another, as copartners under the firm name of Cowan & Son, against the Havre National Bank, for which Frank Browne, receiver, was substituted as party defendant. Judgment for plaintiffs and defendant appeals from it and from an order denying him a new trial. Reversed and remanded.

*Mr. H. S. Kline* and *Mr. C. B. Elwell,* for Appellant, submitted a brief; *Mr. Elwell* argued the cause orally.

Mere forbearance to sue, without any agreement to that effect, is not sufficient consideration for the promise of another to pay the debt of the person liable, although the act of forbearance was induced by such promises. (9 Cyc. 338; 13 Corpus Juris, 348; *In re Thomson's Estate,* 165 Cal. 290, 131 Pac. 1045; *Shadburne* v. *Daly,* 76 Cal. 355, 18 Pac. 403; *Mecorney* v. *Stanley,* 62 Mass. (8 Cush.) 85; *Manter* v. *Churchill,* 127 Mass. 31; *Boyd* v. *Frieze,* 71 Mass. (5 Gray) 31; *In re Rohrig's Appeal,* 176 Mich. 407, 142 N. W. 561.)

The word "proceeds" has been defined in similar cases to mean the net proceeds. It is held that an order to pay out of the proceeds of sale, or a promise to do so, means to pay out of what remains after paying the necessary expenses of the sale, and all expenses necessary to consummate the sale, or put the property in condition to be sold. This was held in the case of *Farrell* v. *Gold Flint Mining Co.*, 32 Mont. 416, 80 Pac. 1027. (See, also, *Coles* v. *Saitta*, 126 N. Y. Supp. 662, 70 Misc. Rep. 232.)

*Messrs. Stranahan & Stranahan* and *Messrs. Norris, Hurd & Hauge*, for Respondent, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

In the case of *In re All Star etc. Corporation* (D. C.), 232 Fed. 1004, the court holds that forbearance to exercise a legal right, even without an express agreement to forbear, constitutes a good consideration for the giving of security. In this case the court specifically held that the existence of a bilateral contract between the parties of forbearance was not necessary, and that from the facts in that case a promise might reasonably be implied.

In *Niles etc. Co.* v. *Ury*, 103 N. Y. Supp. 226, 53 Misc. Rep. 305, the court held that where an assignee of personal property asks a creditor of the assignor for indulgence for a time in the matter of the payment of an account upon promise to pay the same and there was an actual forbearance, the promisor was liable for the amount of the account. (See, also, *Sellars* v. *Jones*, 164 Ky. 458, 175 S. W. 1002; *Saunders* v. *Mecklenburg Bank*, 112 Va. 443, Ann. Cas. 1913B, 982, 71 S. E. 714; *Watters* v. *White*, 75 Conn. 88, 52 Atl. 401; *Boyd* v. *Freize*, 5 Gray (Mass.), 553; *Hill* v. *Omaha etc. R. Co.*, 82 Mo. App. 188.)

The word "proceeds" means "all the proceeds, not merely the clear profits; not a portion thereof but all." (*Atchison etc. Co.* v. *State*, 22 Kan. 1.) In the case of *Capperton's Admrs.* v.

*Capperton's Heirs,* 36 W. Va. 479, 15 S. E. 257, the supreme
court of West Virginia had under consideration the provisions
of a contract for the sale of land which provided that "one-
third of the proceeds of any sale or sales which may be actually
realized" should be paid to the vendors of such land. The
court in referring to such contract said: "It does not say net
proceeds nor does it say gross proceeds; does it not import
gross proceeds? When we speak of proceeds of sale do we
not mean total proceeds unless some language be used to nar-
row the sense?" In *McMurphy* v. *Garland,* 47 N. H. 316, the
court held that the phrase "proceeds of wood and timber" in
a contract of sale was broad enough to include the gross
amount of the sales of timber. In view of the doctrine stated
in the foregoing cited decisions we submit that the word
"proceeds" as used in the promise of the bank to respondents
meant the total proceeds. (*Salisbury* v. *Spofford,* 22 Idaho,
393, 126 Pac. 400; *Dittemore* v. *Cable Milling Co.,* 16 Idaho,
298, 113 Am. St. Rep. 98, 101 Pac. 593; *Merrimack etc. Bank*
v. *Curry,* 4 Kan. App. 125, 46 Pac. 204; *Wheeler etc. Mfg. Co.*
v. *Winnett* (Neb.), 91 N. W. 514; *Coles* v. *Saitta,* 130 N. Y.
Supp. 857, 71 Misc. Rep. 544; *In re Gates,* 64 N. Y. Supp.
1050, 51 App. Div. 350.)

HONORABLE H. H. EWING, Judge of the Eighth Judi-
cial District, sitting in place of MR. JUSTICE REYNOLDS,
disqualified, delivered the opinion of the court.

This cause of action is stated in three counts. In the first,
the plaintiffs allege that they are copartners, and the Havre
National Bank, defendant, is a corporation; that on the twenty-
ninth day of September, 1917, Ever Nielsen was indebted to
the plaintiffs in the sum of $1,833.27; that immediately prior
to the twenty-ninth day of September, 1917, Ever Nielsen had
made arrangements with the defendant, hereinafter referred to
as the bank, whereby the bank was to take charge, supervision,
and control of all the real and personal property of Nielsen

for the purpose of selling and disposing of the same and of applying a part of the proceeds to the payment of the indebtedness of Nielsen to the bank, and of applying sufficient of the balance to the payment of the indebtedness of Nielsen to the plaintiffs, and the bank, in pursuance of this agreement and arrangement, on or shortly after the twenty-ninth day of September, 1917, sold Nielsen's property and received the proceeds thereof, amounting to the sum in excess of $32,000; that Nielsen made and executed an order in writing in favor of the plaintiffs, directed to the bank, requiring it to pay the plaintiffs the sum due them from Nielsen; that said order was thereupon presented by plaintiffs to the bank, and it promised and agreed with plaintiffs that, after the payment of the indebtedness of Nielsen to the bank, it would pay from the proceeds of the sale of Nielsen's property the obligations of Nielsen to the plaintiffs; that on September 29, 1917, the indebtedness of Nielsen to the bank did not exceed $7,500, leaving a large sum of money over and above the amount necessary and required to pay the indebtedness of Nielsen to the bank and to the plaintiffs; that, notwithstanding the promises of the bank to pay plaintiffs their indebtedness from the proceeds, it refused, and does now refuse, to pay the plaintiffs their indebtedness, or any part thereof; and that the whole sum is due and payable.

The second count sets forth the same facts as the first, except that in this count the bank is alleged to be a trustee, as follows: "That by reason of the action of the bank in accepting the real and personal property of Nielsen, and the sale thereof and the receipt of the proceeds under the conditions that the bank should use sufficient of the proceeds to pay the indebtedness of Nielsen to the bank and to the plaintiffs, the bank became, was, and is a trustee for the use and benefit of these plaintiffs in applying sufficient of the proceeds of the sale to pay the indebtedness of Nielsen to the plaintiffs,'' and that the bank has failed to execute the trust.

In the third count plaintiffs set forth the same facts as in the first, except that they rely upon an oral agreement made by the bank to pay their demand against Nielsen. They allege that the balance of Nielsen's property was advertised to be sold on September 29, 1917; that on that date, and prior to the sale, the plaintiffs informed the bank that, unless it would guarantee the payment of Nielsen's indebtedness to them, they would forthwith, and prior to the sale of the property by the bank, cause to be filed in court an action against Nielsen, and a writ of attachment to be issued in the action, and cause sufficient of the property of Nielsen which the bank intended to sell to be levied upon and garnished to satisfy the claim of the plaintiffs; that thereupon the bank stated and represented to the plaintiffs that, if they would forbear the collection and enforcement of their indebtedness against Nielsen at that time, and would refrain from filing the complaint and would desist from having the property of Nielsen seized under a writ of attachment, the bank would pay the plaintiffs the amount of the indebtedness of Nielsen to them from the proceeds of the sale of the real and personal property of Nielsen which the bank proposed to make shortly thereafter; that the bank further represented to the plaintiffs that the property of Nielsen would sell for a sum largely in excess of the amount necessary to pay the indebtedness of Nielsen to the bank, and that a sufficient surplus would remain after paying the indebtedness of Nielsen to the bank to pay the indebtedness of Nielsen to the plaintiffs, and that the bank promised and represented that it would pay from the balance to plaintiffs Nielsen's indebtedness to them as hereinbefore stated; that, by reason of the promises and representations of the bank to the plaintiffs, they refrained from filing their action against Nielsen and from causing his property to be levied upon to satisfy their indebtedness against him, and that the plaintiffs relied upon and believed all the representations and promises of the bank made to them and acted thereon; that the bank at the time

knew that the plaintiffs would and did rely upon the promises and agreements of the bank and refrained from filing the action against Nielsen and attaching his property by reason of such promises and representations and not otherwise.

The answer is, in effect, a general denial. By stipulation the cause was tried by the court without a jury. Plaintiffs prevailed in the district court. The bank appealed from the judgment and from, an order denying its motion for a new trial.

It is first contended by the bank that the third count, the [1, 2]   one upon which the plaintiffs relied in the district court, does not state facts sufficient to constitute a cause of action, for the reason that it is not alleged that there was any agreement on the part of the plaintiffs to forbear to sue and attach. We have examined this count carefully, and do not believe the point is well taken. There is recited therein the promise on the part of the bank through Ritt, its cashier, that the plaintiffs' claim would be paid out of the proceeds of the sale after the obligation of Nielsen to the bank was satisfied, if the plaintiffs would forbear the filing of suit, attaching the property and stopping the sale. It is further alleged that plaintiffs did, by reason of the representations made to them by the bank, forbear to sue Nielsen and attach his property, and that the bank at the time knew that plaintiffs would and did rely upon the promises and agreements of the bank and refrained from filing their action against Nielsen and attaching his property by reason of the promises and representations of the bank, and not otherwise.

Mere forbearance to sue, without an agreement to that effect, is not a sufficient consideration for a promise of another to pay the debt of the person liable; but such agreement may be either express or implied. "It is well settled that forbearance to sue is a sufficient consideration to support a promise. However, a mere forbearance to sue is not enough in the absence of circumstances from which an agreement to

forbear may be inferred. But an actual forbearance to sue may often, in connection with other circumstances, sometimes slight, be evidence of an implied agreement to forbear and thus form a consideration for a promise." (*Sellars* v. *Jones,* 164 Ky. 458, 175 S. W. 1002.) To the same effect are the following: *Manter* v. *Churchill,* 127 Mass. 31; *In re Rohrig's Appeal,* 176 Mich. 407, 142 N. W. 561; *Cobb* v. *Page,* 17 Pa. 469; *In re All Star Feature Corp.* (D. C.), 232 Fed. 1004; *Edgerton* v. *Weaver,* 105 Ill. 43; *Saunders* v. *Mecklenburg Bank,* 112 Va. 443, Ann. Cas. 1913B, 982, 71 S. E. 714.

While an express agreement to forbear to sue is not alleged, and the pleading is not a model, yet we hold that sufficient is set forth in this count to show an implied agreement to that effect.

It is next insisted that plaintiffs should have offered evidence to show that there was a balance from the proceeds of the sale after paying the indebtedness of Nielsen to the Bank, and that, having failed to do so, the motion for nonsuit should have been granted. The evidence on behalf of plaintiffs showed that after the auction sale, Mr. Ritt, the cashier of the defendant bank, and Mr. Nielsen were in the bank, and there Mr. Ritt, with a list of all the bills that Mr. Nielsen owed and knowing the amount for which Nielsen's property sold, made a computation, evidently with the view of determining how near the proceeds of the sale of Nielsen's property would come to liquidating his obligations, and remarked to Nielsen: "Well, there is about $4,500 that would not be touched. You will have that much." It is a well-settled rule that on a motion for a nonsuit everything is deemed proved which the evidence tends to prove. (*Herbert* v. *King,* 1 Mont. 475; *Cain* [3] v. *Gold Mt. Min. Co.,* 27 Mont. 529, 71 Pac. 1004; *McCabe* v. *Montana Cent. Ry. Co.,* 30 Mont. 323, 76 Pac. 701; *Stewart* v. *Stone & Webster Eng. Corp.,* 44 Mont. 160, 119 Pac. 568; *Morelli* v. *Twohy Bros. Co.,* 54 Mont. 366, 170 Pac. 757.) The evidence produced by plaintiffs at least tended to show

that funds were available to pay plaintiffs' claim against Nielsen, and that the motion for nonsuit was properly denied.

Nielsen's property sold for the following amounts: Real estate, $36,000; sheep, $6,970; other personal property, $4,684.75.
[4]   To refute plaintiff's evidence that there was a balance after paying the bank, defendant offered to prove that there were not sufficient available funds to satisfy its claims against Nielsen, to which evidence plaintiffs interposed an objection which was by the court sustained. The bank then made the following offer of proof: ''We will offer to show that the contract for sale to William Williamson was for the sum of $36,000 and as a part of the purchase price he was to assume two mortgages, one for $10,000 and one for $5,000. That was the contract with William Williamson, provided that we should furnish him with the title free and clear of all encumbrances except these two amounts; that at the time of sale to Mr. Williamson there were the following encumbrances against the land:   *   *   *   The sum of $1,726.93, payable to J. B. Cox on a contract for purchase of land which was still due from Nielsen and covering the land included in the sale made to Mr. Williamson; the sum of $560.26 due to the Iowa Land Company on a mortgage given by Mr. Nielsen on land included in the land purchased by Mr. Williamson; the sum of $411.75, the amount of a judgment in favor of the St. Anthony & Dakota Lumber Company against Ever Nielsen, which item was a lien upon the land conveyed to Mr. Williamson; the sum of $1,338.23, the amount of a judgment in favor of the Monticello State Bank against Ever Nielsen, which judgment was a lien upon the land covered by the conveyance to Mr. Williamson; the sum of $8,000 which was paid to Mr. J. H. Schmedeke in settlement of a mortgage of $10,000 and interest, given by Mr. Nielsen to Mr. Schmedeke and covering the land included in the conveyance to Mr. Williamson; also the sum of $91.10 paid to Mr. Fred Schick on a judgment in favor of Fred Schick against Ever Nielsen which was a lien upon the land in question at the time of

sale to Mr. Williamson.   *   *   *   We wish further to show that it was agreed upon the sale to Mr. Williamson that all interest on the mortgages for $10,000 and $5,000 which was due to the Merchants' Trust & Savings Bank of St. Paul was to be paid by Mr. Nielsen up to and including the first day of July, 1917; that there was due in interest the sum of $305.10 on the second mortgage of $5,000, and the sum of $1,200 on the first mortgage of $10,000.   *   *   *   We wish further to show that included in the gross receipts of the auction sale was the sum of $181.85 for two horses to John Ulin. We wish further to show in connection with the sale of sheep that at the time of the sale of the sheep there was a chattel mortgage on these sheep running to the Stockmen's National Bank, and, in order to make the sale, it was necessary to pay off this mortgage, and that the mortgage was paid and amounted at the time of its payment to the sum of $5,186.51.''

Defendant offered in evidence its Exhibits ''A,'' ''B,'' and ''D,'' representing the indebtedness of Ever Nielsen to the bank, to which evidence plaintiffs interposed an objection, which was sustained. It then made an offer of proof. Exhibit ''A'' is a promissory note dated December 13, 1916, made, executed, and delivered by Ever Nielsen to the bank for the principal sum of $7,094.34, payable on demand with interest at the rate of eight per cent per annum from date thereof. Exhibit ''B'' is a promissory note dated October 5, 1916, made, executed, and delivered by Ever Nielsen to the defendant bank for the sum of $6,200, payable on demand, with interest at the rate of twelve per cent per annum from date thereof. Exhibit ''D'' is a promissory note, dated August 25, 1917, made, executed, and delivered by Ever Nielsen to the defendant bank for the sum of $1,578.25, payable on demand with interest at the rate of twelve per cent per annum.

We think the evidence included in both offers should have admitted, the first to show the amount of proceeds from the sale of Nielsen's property available to apply on the bank's

claim against Nielsen, and the second to show the amount of Nielsen's indebtedness to the bank, for there is an allegation in each count of the complaint that the bank's claim was to be paid before the plaintiffs were to receive any of the proceeds of the sale. From the evidence offered, it is apparent that, after deducting from the proceeds of the sale, the amount of the liens upon the property, there remained an amount in- sufficient to pay the bank.

Plaintiffs contend, however, that the bank's promise to pay [5] their claim against Nielsen from the proceeds of the sale was unconditional, and therefore the offered evidence was immaterial. There was evidence admitted on behalf of plain- tiffs, over the objection of defendant bank that its promise of payment was unconditional, but there is no allegation in the complaint that would permit such evidence and the same should have been excluded.

Plaintiffs also contend that, when the bank promised to pay [6, 7] them from the proceeds of the sale, it meant "gross proceeds," and that therefore the first offer of proof was immaterial. There are cases holding that the word "proceeds," when used in connection with the sale of property, means "gross proceeds," and there are others holding that it means "net proceeds"; but we believe that the general rule, and the one supported by the weight of authority, is to the effect that the word is one of equivocal import, and its construction de- pends very much upon the context and the subject matter to which it applies. Applying this rule to the evidence in this case, what did the parties mean by the word "proceeds"? At this time Nielsen's property, both real and personal, was mort- gaged. There were judgments against him. These were mat- ters of record, and the parties hereto were charged with knowledge of the same. All these claims were superior to the bank's claim to the proceeds of the sale. We then hold that, under the facts and circumstances in this case, the word "proceeds" means the sum for which the property sold after deducting the amount of the mortgages and judgments.

Plaintiffs further contend that the offered proof was not [8] admissible under the pleadings. This evidence tends directly to contradict plaintiffs' allegation that there was a balance due from the proceeds of the sale after the bank was paid, and is admissible under the denial in this case. (*Maulding* v. *Ball,* 5 Mont. 96, 1 Pac. 409; *Chealey* v. *Purdy,* 54 Mont. 489, 171 Pac. 926; 13 C. J. 874, and cases cited.)

The court erred in excluding the evidence included in the offers of proof and also in admitting evidence of an unconditional promise by the bank to pay plaintiffs. The judgment and order are therefore reversed, and the cause is remanded to the district court, with directions to grant defendant's motion for a new trial.

*Reversed and remanded.*

Mr. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER and HOLLOWAY concur.

Mr. JUSTICE GALEN: I dissent. In my opinion the third count contained in plaintiff's complaint stated a cause of action, based on a direct promise to pay, and this is abundantly supported by the proof. The plaintiffs relying upon the promises made by the bank refrained from attaching Nielsen's property, and in my opinion they should not now be defeated in their just rights. The bank represented to the plaintiffs that, if they would forbear the collection and enforcement of their indebtedness against Nielsen, the bank would pay the amount of Nielsen's indebtedness to them from the proceeds of the sale of Nielsen's property, real and personal, which the bank proposed to make. The bank was in possession of all the facts as to Nielsen's property, and, having induced the plaintiffs to forbear suit against Nielsen upon positive assurance by it that the property would sell for a sum largely in excess of the amount necessary to pay the indebtedness to the bank and leave sufficient to pay the entire amount due the plaintiffs, the bank should be held to its contract.