SUNBURST OIL & GAS CO., RESPONDENT, *v.* NEVILLE ET AL., APPELLANTS.

(No. 6,110.)

(Submitted June 3, 1927. Decided June 27, 1927.)

[257 Pac. 1016.]

*Real Property—Contracts—Oil and Gas Leases—Statute of Frauds—Principal and Agent—Options—Offer and Acceptance—Consideration—Forbearance to Sue—Revocation of Offer—Time—Notice—Appeal—Correctness of Judgment— Presumption on Appeal.*

Appeal—Correctness of Action of Trial Court Presumed by Supreme Court Until Contrary Shown.
  1. On appeal the supreme court enters upon a consideration of the case with the presumption that it was decided correctly, and in aid of that presumption every legitimate inference will be drawn from the evidence.

Real Property—Oil and Gas Leases—Contract must be in Writing as Well as Authority of Agent to Execute.
  2. An agreement for the leasing of real property for a period longer than one year must be in writing under section 7519, Revised Codes 1921, and an agreement which must be in writing is not valid if executed by an agent unless the latter is authorized in writing to enter into it, in the absence of ratification by his principal.

---

  1. See 2 R. C. L. 219.

Same—Option—What Does not Constitute.

3.  An option being a right acquired by contract to accept or reject a present offer within a limited or reasonable time, plaintiff, in an action in the nature of specific performance to compel defendants to deliver to it a copy of an oil and gas lease which never ripened into a contract because of withdrawal by the lessors of their proposal to lease before acceptance by plaintiff, acquired no rights under it and therefore had no option on the property.

Contracts—Offer and Acceptance.

4.  Before an offer may be said to result in a binding promise it must have been communicated to the offeree and accepted by him, and unless there be a consideration for the offer, until the moment of acceptance it may be revoked, and an acceptance after revocation is inoperative.

Same—Consideration—Forbearance to Enforce Legal Right.

5.  To constitute forbearance to enforce a legal right a sufficient consideration for a contract, there must be an agreement to forbear.

Same—Oil and Gas Lease—Consideration of One Dollar Subject to Explanation.

6.  Under section 10605, subdivision 2, an acknowledgment of the receipt of a cash consideration of one dollar in an alleged oil and gas lease was subject to explanation.

Same — Leases — Invalid for Want of Delivery — Statement Therein not Binding on Grantor.

7.  If an instrument is invalid for want of delivery, statements contained therein are not binding on the grantor.

Same — Offer and Acceptance — Revocation Before Expiration of Time Limit for Acceptance—Right of Offeror—Notice.

8.  In the absence of a consideration, a written offer to lease oil and gas lands was revocable by the offeror at any time prior to the creation of a contract by acceptance, even though the time specified in which acceptance could be made had not expired, and withdrawal of the instrument by the offeror from the bank in which it had been deposited and notification of the fact to the offeree by the bank was a revocation, formal notice not having been necessary.

---

[1]  Appeal and Error, 4 C. J., sec. 2662, p. 731, n. 81; sec. 2739, p. 786, n. 29, 31.

[2]  Frauds, Statute of, 27 C. J., sec. 179, p. 210, n. 22; sec. 183, p. 213, n. 45, 47; sec. 372, p. 295, n. 2; sec. 376, p. 297, n. 23.

[3]  Option, 29 Cyc., p. 1502, n. 99.

[4]  Contracts, 13 C. J., sec. 46, p. 263, n. 74; sec. 52, p. 266, n. 95; sec. 65, p. 271, n. 43; sec. 68, p. 272, n. 48; sec. 102, p. 293, n. 30.

[5]  Contracts, 13 C. J., sec. 193, p. 342, n. 7; sec. 200, p. 348, n. 83.

[6]  Evidence, 22 C. J., sec. 1555, p. 1157, n. 53, p. 1160, n. 56.

[7]  Evidence, 22 C. J., sec. 1029, p. 859, n. 8.

[8]  Banks and Banking, 7 C. J., sec. 222, p. 589, n. 30 New. Contracts, 13 C. J., sec. 103, p. 294, n. 37. Mines and Minerals, 40 C. J., sec. 590, p. 996, n. 58.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

---

4.  See 6 R. C. L. 603–605.

5.  See 6 R. C. L. 659.

Action by the Sunburst Oil & Gas Company against John T. Neville and others. Judgment for plaintiff and defendants appeal. Reversed and remanded, with direction to render judgment for defendants.

*Messrs. Cooper, Stephenson & Hoover* and *Messrs. Harris & Hoyt,* for Appellants, submitted an original and a reply brief; *Mr. G. G. Harris* and *Mr. W. H. Hoover* argued the cause orally.

*Mr. Homer G. Murphy* and *Messrs. Hurd, Rhoades, Hall & McCabe,* for Respondent, submitted a brief; *Mr. Cleveland Hall* argued the cause orally.

The instrument here under consideration is in form a contract, containing mutual promises and considerations, and enforceable as such in law and in equity. It merely lacks the signature of the respondent, but such omission is not vital in any respect. Where a contract is signed by one of the parties only, but is accepted or acted upon by the other party, it is just as binding as if signed by both parties. Anything that will amount to a manifestation of a formal determination to accept, communicated or put in the proper way to be communicated to the party making the offer, will complete the contract. (*Steinbrenner* v. *Minot Auto Co.,* 56 Mont. 27, 180 Pac. 729.) Signature is not always essential to the binding force of an agreement. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways; and unless a contract is required by statute or arbitrary rule to be in writing, it need not be signed, provided it is accepted and acted on. (13 C. J. 305; *Henderson* v. *Henderson,* 136 Iowa, 564, 114 N. W. 178; *Whatley* v. *Reese,* 128 Ala. 500, 29 South. 606; *Leonard* v. *Howard,* 67 Or. 203, 135 Pac. 549; *Buffington* v. *McNally,* 192 Mass. 198, 78 N. E. 309; *Parker* v. *Carter,* 91 Ark. 162, 134 Am. St. Rep. 60, 120 S. W. 836; *Sparks* v. *Mauk,* 170 Cal. 122, 148

Pac. 926; *Babbit* v. *Central Life Ins. Co.*, 93 Kan. 564, 144 Pac. 837; *Burke* v. *Mead*, 159 Ind. 252, 64 N. E. 880; *Ullsperger* v. *Meyer*, 217 Ill. 262, 3 Ann. Cas. 1032, 2 L. R. A. (n. s.) 221, 75 N. E. 482; *Cary* v. *McIntyre*, 7 Colo. 173, 2 Pac. 916; *Malsby* v. *Gamble*, 61 Fla. 310, 54 South. 766.) A written instrument such as this may be considered as an offer (13 C. J. 277), requiring only the acceptance or signature of plaintiff to become a contract. (1 Elliott on Contracts, sec. 43; *Groetzinger* v. *Wyman*, 105 Iowa, 574, 75 N. W. 512; *Elastic Tip Co.* v. *Graham*, 174 Mass. 507, 55 N. E. 315; *Taylor Co.* v. *Bannerman*, 120 Wis. 189, 97 N. W. 918; *Happel* v. *Rosenthal*, 53 Misc. Rep. 649, 103 N. Y. Supp. 715; *McCauley* v. *Schatzley*, 44 Ind. App. 262, 88 N. E. 972; *Spinney* v. *Downing*, 108 Cal. 666, 41 Pac. 797; *Hunt* v. *S Y Cattle Co.*, 75 Mont. 594, 244 Pac. 480.)

Appellants maintain that the instrument was without consideration, was not delivered and was not accepted. It recites the receipt by appellant of a cash consideration of one dollar. This consideration is entirely sufficient, especially where the consideration for the contract or conveyance itself is adequate, as here. (*Smith* v. *Bangham*, 156 Cal. 359, 104 Pac. 689; *Guyer* v. *Warren*, 175 Ill. 328, 51 N. E. 580; *Ross* v. *Parks*, 93 Ala. 153, 30 Am. St. Rep. 47, 11 L. R. A. 148, 8 South. 368; *Thomason* v. *Bescher*, 176 N. C. 622, 2 A. L. R. 626, 97 S. E. 654; *Alabama Cent. R. Co.* v. *Long*, 158 Ala. 301, 48 South. 363.) Thus it is held that the payment of one dollar is a sufficient consideration for an option to lease oil land. (*McKay* v. *Tally* (Tex. Civ. App.), 220 S. W. 167; *Bost* v. *Biggers Bros.* (Tex. Civ. App.), 222 S. W. 1112; *Morris* v. *Texas Pac. Oil Co.* (Tex. Civ. App.), 228 S. W. 981; *Davis* v. *Texas Co.* (Tex. Civ. App.), 232 S. W. 549; *Silverman* v. *Emerson* (Tex. Civ. App.), 257 S. W. 612.)

Furthermore, respondent's forbearance to redeem was a sufficient consideration to support the contract. (*Doorly* v. *Goodman*, 71 Mont. 529, 230 Pac. 779; *Noyes* v. *Young*, 32

Mont. 226, 79 Pac. 1063; *Cowan* v. *Browne,* 63 Mont. 82, 206 Pac. 432; *Parnell* v. *Davenport,* 36 Mont. 571, 93 Pac. 939; 13 C. J. 343.) The mere fact that the right is doubtful is of no significance. It is sufficient if it is not utterly ground-less and be bona fide. (*Bank of Ontario* v. *Hoskins,* 33 Mont. 306, 83 Pac. 493; *Thompson* v. *Hudgins,* 116 Ala. 93, 22 South. 62?; *Harris* v. *Cassady,* 107 Ind. 158, 8 N. E. 29; *Bridges* v. *Blake,* 106 Ind. 332, 6 N. E. 833; *Brown* v. *Jennett,* 130 Iowa, 311, 5 L. R. A. (n. s.) 725, 106 N. W. 747; *Long* v. *Towl,* 42 Mo. 545, 97 Am. Dec. 355; *Crosby* v. *Wood,* 6 N. Y. 369.) This rule has been applied to cases involving a waiver or relinquishment of the right to redeem or equity of redemption. (*Watkins* v. *Turner,* 34 Ark. 663; *Shade* v. *Creviston,* 93 Ind. 591; *Lane* v. *Flint,* 217 Mass. 96, 104 N. E. 570; *Gunnell* v. *Emerson,* 80 Mo. App. 322; *Bickel* v. *Wessinger,* 58 Or. 98, 113 Pac. 34.)

Appellants urge that there having been no delivery of the instrument, it may not be considered as an offer. No authorities are cited as supporting this supposed rule. An offer requires communication, not delivery, to make it effective. The offer here was communicated directly to Jackson, the agent of respondent, and by him to respondent. It was again communicated by appellants' agent, the Conrad Bank. This would seem to be a sufficient communication under all the authorities. (13 C. J. 271.)

Where the proposer prevents acceptance in the manner specified he may not benefit thereby. (Secs. 7452, 7453, Rev. Codes 1921; 27 C. J. 342.) Section 7492 provides: "Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." An offer to perform is the equivalent of performance. (Sec. 7431.) That there was here an acceptance under the above statutory rules seems apparent. Relying upon the offer respondent abandoned an intention of redeeming the property covered by the lease, and allowed the time for redemption to expire. On the return of the

president of respondent to Great Falls on October 10, he went to the Conrad Bank and offered to sign the contracts on behalf of respondent. At that time also he tendered to the bank the $1,500 payment. When it was learned that the papers had been taken from the bank, money was wired to appellants at Bottineau, North Dakota, on October 11. All of respondent's tenders were refused. On October 8, Hennessy, agent for appellants, had ascertained that no attempt at redemption had been made by respondent. We have then here not only an acceptance, but a communication of that acceptance. (13 C. J. 285; *McCleskey & Whitman* v. *Howell Cotton Co.,* 147 Ala. 573, 42 South. 67.)

Since consideration was paid for the offer, it could not be withdrawn or revoked until after the expiration of the time limited in the offer, or if no time was so limited, then not until after the expiration of a reasonable time. An offer is a continuing offer under all the circumstances until it is withdrawn, and the withdrawal communicated; and if it is accepted, and the acceptance is communicated before the offer is withdrawn and notice thereof given, and within the time expressly or impliedly limited, the agreement is complete, and the offer is no longer revocable. (13 C. J. 294; *Cooper* v. *Lansing Wheel Co.,* 94 Mich. 272, 34 Am. St. Rep. 341, 54 N. W. 39; *Brinley* v. *Nevins,* 162 App. Div. 744, 147 N. Y. Supp. 985; *Sherley* v. *Peehl,* 84 Wis. 46, 54 N. W. 267.)

The revocation of an offer must be communicated to prevent an acceptance from changing it into a binding contract, and it is not communicated to the offeree unless it is actually brought to his knowledge. (13 C. J. 295; *Waterman* v. *Banks,* 144 U. S. 394, 36 L. Ed. 479, 12 Sup. Ct. Rep. 646 [see, also, Rose's U. S. Notes]; *Stitt* v. *Huidekopers,* 17 Wall. (U. S.) 384, 21 L. Ed. 644; *Eskridge* v. *Glover,* 5 Stew. & P. 264 (Ala.) 26 Am. Dec. 344; *Kempner* v. *Cohn,* 47 Ark. 519, 58 Am. Rep. 775, 1 S. W. 869; *Smith* v. *Weaver,* 90 Ill. 392; *Burton* v. *Shotwell,* 13 Bush (Ky.), 271; *Dambmann* v. *Lorentz,* 70 Md. 380, 14 Am. St. Rep. 364, 17 Atl. 389; *Boston*

& *M. Ry. Co.* v. *Bartlett,* 3 Cush. (Mass.) 224; *Potts* v. *White-head,* 20 N. J. Eq. 55; *Quick* v. *Wheeler,* 78 N. Y. 300; *Wall* v. *Minneapolis, St. P. & S. S. M. R. Co.,* 86 Wis. 48, 56 N. W. 367.) A revocation must ·be direct and explicit. (1 Williston on Contracts, pp. 96, 98.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In July, 1920, Andrew Dipple, who then was the owner of lands in Toole county, executed an oil and gas lease for a term of years to Gordon Campbell. Eventually this lease was assigned to the plaintiff. Prior to giving the lease Dipple had executed several mortgages upon the land, two to Mohall State Bank and a third to Hart-Parr Company. The Mohall State Bank foreclosed its second mortgage but did not make plaintiff, then owner of the Campbell lease, a party to the action. Dipple did not attempt to redeem from .the sale following foreclosure. The Hart-Parr Company foreclosed its mortgage and at the sale, on October 6, 1922, purchased the property. The defendants, having acquired some interest in the property, redeemed from both foreclosure sales.

Dipple claimed that he was not properly foreclosed of his rights in the Mohall State Bank foreclosure and that he had a right to redeem from the Hart-Parr foreclosure sale. He threatened to start suit to cancel the sheriff's deed which had been executed following the Mohall State Bank foreclosure, on the ground that the court had not acquired jurisdiction as to him.

Plaintiff, owner of the Campbell lease, claimed that as successor to Dipple it had the right to redeem from the Hart-Parr foreclosure sale. The defendants denied that Dipple had any right of redemption, or any interest in the property whatever.

In view of the fact that the period of redemption following the Hart-Parr sale would expire on October 6, 1923, an at-

torney of the plaintiff on September 28 telegraphed Dr. Johnson, one of the defendants, who resided at Bottineau, North Dakota, asking whether he and his associates could meet R. P. Jackson, a representative of the plaintiff, early in the following week and "adjust the Dipple lease matter." In answer Johnson telegraphed plaintiff: "Can meet your representative R. P. Jackson at Bottineau any time next week regarding Dipple lease but are advised you have no right of redemption and will not deal on the basis of old lease." Mr. Jackson arrived at Bottineau on October 2.

The defendants, Johnson, Moline and Neville, were trustees for a number of people living at Bottineau and vicinity. Mr. Jackson's purpose in going to Bottineau, as he said, was to "confer with Dr. Johnson and Mr. Neville there with a view of entering into a contract or oil and gas lease" covering the Dipple land. He was in direct charge of the leasing department of the plaintiff company but did not have any written authority from the plaintiff to enter into a contract with the defendants. Having met the defendants and their attorney, Mr. Adams, an extended discussion took place. There was considerable debate as to whether the plaintiff had the right to redeem from the Hart-Parr foreclosure sale. Mr. Jackson asserted that the plaintiff did have the right to redeem and this the defendants emphatically denied. Jackson told the defendants that if they could not arrive at an agreement he would return to Shelby for the purpose of redeeming the property from the sale. The fact that Dipple was threatening to commence a suit was discussed. Mr. Jackson said he thought a settlement could be made with Dipple by giving him a royalty of one and one-half or two per cent, and if that could be done he thought his principal would assume that obligation. There is considerable conflict in the testimony as to whether Jackson simply gave it as his opinion that a settlement could be reached with Dipple upon those terms or whether he affirmatively represented that such a settlement could be made. It was asserted

by all of those who testified for the defendants that they
agreed to enter into a contract relying upon the representa-
tion of Jackson that the plaintiff would make a settlement
with Dipple and would assume the obligation of paying him
the royalty agreed upon. This Mr. Jackson denies. After
discussions which ran over a period of two days, Mr. Jack-
son presented a form of lease which he said his principal
would be willing to execute. This was amended in some par-
ticulars by the defendants and redrafted by Mr. Adams. It
is unnecessary to explain its terms in detail. It will be suffi-
cient to say that it purported to be an oil and gas lease for
a term of years from the defendants as trustees to the plain-
tiff, containing provisions respecting development upon the
land, payment of royalty, and so forth. In the beginning
there was specified a consideration of one dollar ''in hand
paid by the party of the second part, the receipt whereof is
hereby acknowledged, and of the covenants and agreements
hereinafter contained on the part of the party of the second
part to be kept and performed.'' Later on it was provided
that the party of the second part (the plaintiff) should pay
the parties of the first part (the defendants) ''the sum of
Fifteen Hundred Dollars in cash at the delivery of these
presents or within ten days of the date hereof, and the fur-
ther sum of Fifty-seven Hundred Dollars, together with in-
terest thereon at eight per cent per annum from the date
hereof, and such further sum as the parties of the first
part shall hereafter pay upon the principal and interest
of the first and second mortgages against the said prem-
ises, with interest thereon as aforesaid from the date of pay-
ment thereof by said first parties,'' and methods of payment
were provided for. It was provided also that in case the
parties of the first part were put to any expense to defend
their title to the land or any part thereof by reason of the
act of some party other than the parties of the first part,
the party of the second part should pay the expense of any
litigation necessary to defend the title; the parties of the

first part to select their own attorney and the party of the second part to pay his fees. This provision was inserted in apprehension of litigation with Dipple.

Mr. Jackson was not an officer of the plaintiff and did not. attempt to execute the lease which the parties have referred to as the contract. He told the defendants that it was customary for the president of the company personally to execute all contracts for the plaintiff but if they preferred to have him do so he would sign as attorney-in-fact for the plaintiff. The defendants said they preferred to have the contract executed in the usual manner by the president of the company. Jackson informed them that the president was frequently away from Great Falls, his home, for extended periods of time. It was agreed that ten days would be a reasonable time within which the contract should be executed by the plaintiff, and that period was inserted therein. Two copies were signed and acknowledged by the defendants. It was agreed that these should be sent immediately to the Conrad Banking Company at Great Falls, Montana, for execution by the plaintiff. The documents arrived at the office of the Conrad Banking Company on the morning of October 6. With the documents there was transmitted by the defendants a letter addressed to the Conrad Banking Company, in which it was said: "These contracts have been signed by the three first parties and are sent to you for the signature of the party of the second part. Party of the second part should sign by its proper officer and attach its corporate seal. We enclose also sight draft for $1,500, drawn against the Sunburst Oil and Gas Co. Upon execution of both duplicate contracts by the Sunburst Oil and Gas Co. and upon its payment to you for us of the $1,500 sight draft you will kindly deliver one duplicate contract to Sunburst Oil and Gas Co. and return the other one to us with the $1,500 paid by the Sunburst Oil and Gas Co., which is to be free of charge to us." No written agreement was signed at any time by anyone representing the plaintiff.

It seems to be agreed by all that Mr. Jackson was in a hurry to leave Bottineau in order that he might arrive in Shelby on October 5. On the evening of October 4, about 11 o'clock, Mr. Neville, one of the defendants, conveyed Mr. Jackson by automobile from Bottineau to Towner, at which point Jackson boarded a Great Northern train, which arrived in Shelby about 5:30 in the afternoon of October 5. All understood that the period for redemption of the property from the sale would expire on October 6. The defendants testified Mr. Jackson told them that he desired to reach Shelby in time to redeem the property if that were deemed advisable by the officers of the plaintiff, while he says he desired to return there in order to make a settlement with Dipple if that were possible. Mr. Jackson agreed to advise the defendants of the result of his conference with Dipple. On the evening of October 5 Mr. Jackson sent the following telegram to Dr. Johnson: "Am informed by Dipple that he would accept six and one-fourth per cent royalty and surface rights as settlement otherwise suit will be filed. Black informs me no mailing of notice or affidavits of mailing filed under Mohall Bank foreclosure. Will be at Great Falls Monday. My company will assume no additional royalty." The purport of this telegram is variously interpreted by the parties. The meaning intended by Jackson was widely different from that which defendants deduced from it. Whether the interpretation given it by the defendants was justified is not now important. The fact is that it set in motion that which resulted in a change of purpose on part of defendants. It should be said, and may as well be said here, that we are impressed with the good faith shown throughout by the plaintiff; and while there is intimation to the contrary, we are unable to see that the defendants did not act in good faith also. They may have been mistaken; if so, we think they were honestly mistaken.

Upon receipt of this telegram Dr. Johnson called his associates and their attorney into conference, and as a result they

dispatched a Mr. Hennessy to Great Falls with a letter to the Conrad Banking Company, in which they said that if the plaintiff had already signed the contracts to deliver one of them and the money paid, to Mr. Hennessy, but "if the contracts have not been executed by Sunburst Oil and Gas Co. kindly deliver them forthwith to the bearer, Mr. Hennessy, and if there are any charges for your trouble Mr. Hennessy will pay you." Pursuant to this direction the Conrad Banking Company delivered the documents to Hennessy and he delivered them to the defendants. The fact that the documents had arrived at the office of the Conrad Banking Comany seems to have been communicated by an officer of that company to the office of the plaintiff on the morning of October 6, and Mr. Jackson examined the papers on Monday morning, October 8. On the day the papers were withdrawn, the Conrad Banking Company communicated that fact to the office of plaintiff. Mr. Stevenson called in person at the office of the Conrad Banking Company on October 10, to ascertain "what had happened and why." On October 11 the plaintiff tendered the sum of $1,500 to the defendants and offered to execute the agreement but the tender was refused. Thereafter the plaintiff brought this suit in the nature of specific performance, or to be exact, to compel the defendants to deliver to the plaintiff one of the duplicate copies of the "contract." After trial the court entered judgment in favor of the plaintiff, from which the defendants have appealed.

The court did not make any findings of fact and we are [1] not apprised of the theory upon which it reached its decision. We start out with the presumption that the case was decided correctly, and in aid of that presumption every legitimate inference will be drawn from the evidence. (*Tucker* v. *Missoula Light & Water Co.*, 77 Mont. 91, 250 Pac. 11; *Security State Bank* v. *Soule*, 70 Mont. 300, 225 Pac. 127.) In their argument in support of the decree counsel for plaintiff discuss the instrument under three heads:

considering it as (1) a contract, (2) an option, (3) an offer.

1. If either, the instrument was required to be in writing. [2] "An agreement for the leasing for a longer period than one year, or for the sale of real property, or for an interest therein" must be in writing. (Sec. 7519, Rev. Codes 1921.) An agreement which must be in writing is not valid if executed by an agent unless the agent is authorized in writing to enter into it (sec. 7939, Id.), in the absence of ratification by the agent's principal. There is no question of ratification in the case at bar.

Plaintiff's agent was not authorized to execute the contract in behalf of the plaintiff; it was known to the defendants that before the contract could be executed by the officers of the plaintiff who were authorized to execute it, it was necessary that the instrument be forwarded to Great Falls. This is the express pleading of plaintiff, which the proof supports. Plaintiff's agent was a mere negotiator, without power to effect the agreement under discussion. To the terms embodied in the instrument there never was an expression of mutual assent by the defendants and the plaintiff. There was no meeting of minds between the defendants and anyone authorized to speak for the plaintiff. There was therefore no contract. The instrument which embodied the terms which would have ripened into a contract was forwarded to Great Falls, but was withdrawn before the plaintiff signified its acceptance thereof. Before acceptance by plaintiff the defendants changed their minds and withdrew their proposal. As we shall see hereafter, they were within their rights in so doing.

2. "An option is a right acquired by contract to accept or [3] reject a present offer within a limited or reasonable time." (*Winslow* v. *Dundom,* 46 Mont. 71, 125 Pac. 136; *Snider* v. *Yarbrough,* 43 Mont. 203, 115 Pac. 411; *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695.) It is clear that plaintiff did not have any right acquired by

contract. What has been said upon the contract feature of the case is equally applicable upon this feature of it.

3. But it is earnestly argued that the defendants made the [4] plaintiff an offer. An offer is a promise; it is a statement made by the offeror of what he will give in return for some promise or act of the offeree. (1 Williston on Contracts, sec. 25.) The offer must be communicated to the offeree. Before it will become a binding promise the offer must be accepted. There must be mutual consent to create the contract. In order to form a contract there must be an offer by one party and an acceptance of it by the other. (*Glenn* v. *S. Birch & Sons Construction Co.,* 52 Mont. 414, 158 Pac. 834; *Polich* v. *Severson,* 68 Mont. 225, 216 Pac. 785.) Unless there be consideration for the offer, until the moment of acceptance it may be revoked and a subsequent acceptance will be inoperative. (Clark on Contracts, sec. 23; 13 C. J. 293.)

"So long as the offer has been neither accepted nor rejected the negotiation remains open, and imposes no obligation upon either party; or one may decline to accept or the other withdraw his offer; and either rejection or withdrawal leaves the matter as if no offer had ever been made." (*Minneapolis etc. Ry.* v. *Columbus Rolling Mills,* 119 U. S. 149, 30 L. Ed. 36, 7 Sup. Ct. Rep. 168, quoted in *Brophy* v. *Idaho Produce & Provision Co.,* 31 Mont. 279, 78 Pac. 493; *Donlan* v. *Arnold,* 48 Mont. 416, 138 Pac. 775.)

With these principles in mind we shall proceed to the main point in the case.

The defendants say that upon the facts shown, the defendants did not, in contemplation of law, make an offer; they merely offered to contract. Whether or not there is anything in this distinction, we will assume, for the purposes of this case, that the defendants did make an offer. It is essential to determine whether it was based upon a consideration. Upon the evidence it was not. Counsel for plaintiff claim

[5]   plaintiff's forbearance to redeem the property from the foreclosure sale is an adequate consideration. That it might be under some circumstances is true. But the fact here is that the defendants do not seem to have concerned themselves on this score. They seem, rightly or wrongly, to have satisfied themselves that plaintiff did not have any such right. They were concerned about the probability of a suit by Dipple. Their testimony indicates that they considered plaintiff at liberty to attempt the redemption if it saw fit to follow that course. Forbearance to enforce a legal right is a sufficient consideration to support a contract, but there must be an agreement to forbear. (*Doorly* v. *Goodman,* 71 Mont. 529, 230 Pac. 779; *Cowan* v. *Browne,* 63 Mont. 82, 206 Pac. 432.) There was no such agreement between plaintiff and defendants.

It is said that Neville, one of the defendants, admitted [6] that one dollar, a part of the consideration, named in the contract, was paid to him by Jackson, but this admission was explained and nullified by him. It seems certain that he did not receive any part of the consideration recited in the contract. It is particularly noteworthy that Mr. Jackson did not testify that he made any such payment. To the point that the writing contained an acknowledgment of the receipt of one dollar, it is enough to say that even if the instrument could be referred to, the statement is subject to explanation. (Sec. 10605, subd. 2, Rev. Codes 1921.) But [7] if an instrument is invalid for want of delivery, statements contained therein are not binding on the grantor. (Devlin on Deeds, sec. 260a.)

The instrument was sent to the Conrad Banking Company [8] with directions. The Conrad Banking Company was the agent of the defendants for the purposes expressed. The instrument was subject to the control of the defendants until accepted by the plaintiff. If the offer was communicated to the plaintiff it would seem that it was by the information

given by the Conrad Banking Company to plaintiff's office. It cannot be held that it was communicated to plaintiff's agent Jackson.

An offer may be revoked at any time before its acceptance is communicated to the offeror. (Sec. 7494, Rev. Codes 1921.) Since an offer unaccepted creates no rights and is not binding on the party making it, it follows that it may be revoked at any time before acceptance. An order, for instance, given to the agent of the party for whom it is made, who has no authority to accept it, is a mere proposal and revocable at any time before its principal accepts it. (Clark on Contracts, p. 47.)

That the offer was not accepted is clear. But it is argued that the defendants did not have the right to revoke it when they did; it is said that if plaintiff's position that it had ten days in which to signify its acceptance is untenable, nevertheless it has a reasonable time in which to do so. Neither position may be maintained. An offer, unless for consideration, may be revoked by the offeror at any time prior to the creation of a contract by acceptance, even though a definite time in which acceptance may be made is named in the offer. (Clark on Contracts, sec. 26; *Brown* v. *Savings Union*, 134 Cal. 448, 66 Pac. 592; *Cooper* v. *Lansing Wheel Co.*, 94 Mich. 272, 34 Am. St. Rep. 341, 54 N. W. 39.) The withdrawal of the instrument by the defendants and the communication of the fact by the Conrad Banking Company to the plaintiff's office, the same course pursued in communicating the offer, must be held to have been a revocation of the offer. (Secs. 7486, 7495, Rev. Codes 1921.) A formal notice is not necessary to constitute a communicated revocation.

The defendants had the right to revoke the offer and did so before acceptance. The decision of the trial court cannot be sustained.

The judgment is reversed and the cause is remanded to the district court of Cascade county, with direction to render judgment for defendants.

*Reversed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.

Rehearing denied July 18, 1927.