No. 14882

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

EDWARD R. RICKETT and LORRAINE A.
RICKETT, husband and wife,

Plaintiffs and Respondents,

vs.

KENNETH M. DOZE et al.,

Defendants and Appellants.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable C. B. Sande, Judge presiding.

Counsel of Record:

For Appellants:

Beiswanger and Jarussi, Billings, Montana
Gary L. Beiswanger argued, Billings, Montana

For Respondents:

Joseph P. Hennessey argued, Billings, Montana

---

Submitted: November 6, 1979

Decided: DEC - 5 1979

Filed: DEC - 5 1979

<u>Thomas J. Kearney</u>
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Respondents initiated this action in District Court, the Thirteenth Judicial District, Stillwater County, the Honorable C. B. Sande presiding. Respondents brought the action to enforce a contract entered into with appellants. Appellants appeal the judgment of the District Court entered in June 1979 awarding respondents $25,000.00 on the contract, $4,452.60 in interest, and $5,330.23 in attorney fees.

On March 26, 1973, appellants Kenneth and Virginia Doze, as sellers, and respondent Edward Rickett, as buyer, entered into a contract for deed. The deed covered some 344 acres of real property located in Stillwater County, Montana. The purchase price of the property was $330,000. The contract provided for a down payment of $75,000. Of this amount, $25,000 was paid on the execution on the contract with the remaining $50,000 together with interest at 6 percent to be paid on or before March 15, 1974. The first annual installment under the contract was also due on March 15, 1974.

The 1973 contract called for the Dozes to execute a warranty deed conveying the property to Rickett in fee simple free of all liens and encumbrances. The contract also provided that Rickett would be entitled to a partial deed release of ten or more acres of the land when Rickett had paid the Dozes enough on the total purchase price to establish a relationship of $1000 paid for each acre to be released.

Rickett took possession of the property under the terms of the contract. He did not, however, make any of the further payments called for in the contract. On March 22,

-2-

1974, the Dozes sent Rickett a notice of default. Rickett failed to cure the default within the thirty-day period provided in the contract. Consequently, the Dozes exercised their acceleration option and declared the entire outstanding balance of the contract with accrued interest immediately due. In a letter dated April 25, 1974, and served on Rickett in May 1974, the Dozes notified Rickett of the default and termination. The notice provided that if the entire amount owing was not paid within 60 days, the Dozes would consider the contract terminated and retake possession of the property. Rickett did not pay the amount owing.

On April 19, 1974, Rickett sent the Dozes a letter demanding the partial release called for in the contract. The Dozes did not respond. On June 26, 1974, Rickett sent the Dozes a notice of default for failure to comply with the deed release provisions of the contract. The Dozes continued to ignore Rickett's request for the deed release. The Dozes contend they did not execute the release because of Rickett's default. Rickett contends the releases were not executed because of a mortgage on the property preventing the Dozes from passing clear title to the property. The First Citizens Bank of Billings did hold a $60,000 mortgage on the property.

After this period of reciprocal notices and demands, the parties entered into negotiations to resolve their differences. On August 1, 1974, Rickett and his wife, respondent Lorraine Rickett, and the Dozes executed a new contract for the same property. Under the new contract, the Dozes agreed to pay the Ricketts 25 percent of any future sales of the property not to exceed $25,000. In return Rickett agreed to (1) waive any rights he had in the former

-3-

contract for deed, (2) deliver immediate possession of the property to the Dozes, (3) pay $530.50 for past due invoices for insurance premiums, horses and saddles, (4) pay $500 in damages, and (5) warrant that all liens on the property created by Rickett would be removed within thirty days of the agreement.

The Dozes had sold all the land involved by January 1978. They refused, however, to pay the Ricketts the $25,000 as provided in the agreement of August 1, 1974.

The Ricketts initiated this action to enforce the 1974 contract. A nonjury trial was held on May 22, 1979. From a judgment in favor of the Ricketts, the Dozes appeal.

The sole issue on appeal is whether the 1974 contract was supported by consideration.

This case involves the application of one of two basic rules of contract law. It is hornbook law that a promise to perform an existing legal obligation does not constitute consideration for a contract. 17 Am.Jur.2d Contracts §119, at 465; Heckman and Shell v. Wilson (1971), 158 Mont. 47, 59, 487 P.2d 1141, 1147. It is equally well-established that the relinquishment of a legal or contract right is sufficient consideration to support a contract. 17 Am.Jur.2d Contracts §109, at 455; Sunburst Oil and Gas Company v. Neville (1927), 79 Mont. 550, 564, 257 P. 1016, 1020.

To resolve the problem in the case at bar, we must determine which of the above rules apply. If the 1974 contract merely required Rickett to perform his obligations under the 1973 contract, the second contract is void for lack of consideration. If, however, Rickett relinquished some contractual rights when he and his wife entered into the second contract, the waiver constituted consideration

-4-

for the 1974 agreement. The 1974 contract would thus be enforceable.

Looking to the facts, Rickett initially violated the terms of the 1973 contract by failing to pay the balance of the down payment or the first annual payment when due on March 15, 1974. The Dozes took appropriate steps under the default provisions of the first contract to terminate Rickett's rights under the contract. Rickett received final notice of the default in May 1974. His rights under the contract terminated 60 days later.

Meanwhile, on April 19, 1974, Rickett requested the Dozes to execute a partial deed as required by the 1973 contract. The Dozes, for whatever reason, failed to execute the deed release. This put the Dozes in default under the terms of the first contract.

Thus, on August 1, 1974, when the parties executed the second contract, both had defaulted on the first. In paragraph 6 of the 1974 contract, the Ricketts and the Dozes agree that:

> ". . . the parties hereto and each of them do hereby mutually release and discharge the other party, their heirs, executors, administrators, and assigns, from any and all liability and damages whatsoever, in any way, related to said contract for deed dated March 15, 1973 . . ."

Under this clause of the second contract, the Dozes agreed not to hold Rickett liable for his breach of the 1973 contract. The clause also prohibits Rickett from suing the Dozes for damages for not releasing a portion of the contract property. Both parties relinquished legal rights in executing the 1974 contract. Under the second rule set out above, both parties gave consideration for the second contract. The District Court, therefore, acted properly in enforcing the contract.

Affirmed.

John Conway Harrison
Justice

We concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_____

_John C. Sheehy_
Justices

Mr. Justice Daniel J. Shea concurring:

I would affirm the judgment--there was a valid con-
sideration for the second contract. What bothers me, however,
is the fact that defendants asserted in District Court and
before this Court that the second contract was not supported
by a valid consideration. Defendants' counsel was involved
in the drafting, or at least in advising his clients con-
cerning the execution of both the first and the second contract.

Did the defendants and their counsel believe even before
the second contract was signed that it was not supported by a
valid consideration and thus that plaintiffs in fact could
not enforce the contract against the defendants? Or, did
the defendants and their counsel, when faced with plaintiffs'
attempted enforcement of the second contract, suddenly arrive
at the no consideration defense in a last ditch attempt to
avoid enforcement?

We have a situation here where I assume counsel advised
his clients to sign the second contract. The assumption
would be, of course, that the defendants believed they were
signing a legally enforceable contract. But when the plain-
tiffs sought enforcement against the defendants, an attempt
is made to hide behind the defense of no consideration. This is a
rather strange set of circumstances to be asserting that
defense.

                                                   _____
                                              Justice